**The STANFORD DAILY et al.,**
**Plaintiffs,**

**v.**

**James ZURCHER, Individually and as Chief of Police of the City of Palo Alto, County of Santa Clara, State of California, et al., Defendants.**

**No. C–71–912 RFP.**

United States District Court,
N. D. California.

July 17, 1974.

Anthony G. Amsterdam, Stanford, Cal., Howard, Prim, Smith, Rice & Downs, Jerome B. Falk, Jr., and Franklin R. Garfield, San Francisco, Cal., for plaintiffs.

Wm. M. Siegel, County Counsel, County of Santa Clara, San Jose, Cal., Ropers, Majeski, Kohn, Bentley & Wagner, Redwood City, Cal., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

On October 5, 1972, this court ruled on plaintiffs' motion for summary judgment and granted declaratory relief which upheld the constitutional rights of individuals, not suspected of any crime, to be free from unwarranted police searches and seizures. The Stanford Daily v. Zurcher, 353 F.Supp. 124 (N.D. Cal.1972). Subsequently, on August 10, 1973, the court granted plaintiffs' motion for an award of reasonable attorneys' fees. The Stanford Daily v. Zurcher, 366 F.Supp. 18 (N.D.Cal.1973). Now, the court must determine what amount actually constitutes reasonable attorneys' fees.

The federal appellate courts, recognizing the difficulty of weighing the factors relevant to the determination of reasonable fees, grant federal district courts wide discretion in setting attorneys' fees. *See, e.g.,* Kelly v. Guinn, 456 F.2d 100, 111 (9th Cir. 1972); Cato v. Parham, 403 F.2d 12, 16 (8th Cir. 1968); Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 221 (9th Cir. 1964). However, district courts' exercise of this grant of discretionary authority must be kept within certain evidentiary bounds. *See, e.g.,* Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The court must avoid the Scylla of simply accepting the attorneys' account of the value of the legal services which they have provided. "The court cannot properly fix attorneys' fees merely by multiplying the hourly rate for each attorney times the number of hours he worked on the case." Lindy Bros. Bldrs., Inc. of Phila. v. American R. and S. San. Corp., 487 F. 2d 161 (3rd Cir. 1973). At the same time, the court must avoid the Charybdis of decreasing reasonable fees because the attorneys conducted the litigation more as an act pro bono publico than as an effort at securing a large monetary return. *Cf.* Sims v. Amos, 340

F.Supp. 691 (M.D.Ala.N.D.1972). The rationale of awarding reasonable attorneys fees, after all, springs from the need for placing the legal defense of certain constitutional principles and some congressional policies on an equal footing with the protection of private interests. *Cf.* Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 402, 91 S.Ct. 1999, 29 L. Ed. 619 (1971); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002, 1008 (9th Cir. 1972). See generally Note, Allowance of Attorneys' Fees in Civil Rights Litigation, 7 Colum.J.L. and Soc.Prob. 381 (1971).

The Ninth Circuit, in Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974), suggested that district courts might consider the evidentiary factors listed in two cases from other circuits in determining reasonable attorneys' fees.

One case, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (concerning attorneys' fees in a Title VII action), lists twelve factors: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment due to acceptance of the case; the customary fee; the contingent or fixed nature of the fee; the time limitations imposed by the client or the case; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature of the professional relationship with the client; and awards in similar cases. The Fifth Circuit's list does offer a useful catalogue of factors which a district court might consider in setting reasonable attorneys' fees. Of course, a district court might not find it possible to consider all, or most of, the factors in any one case. For example, this court notes that the novelty of the legal issues in this litigation makes it impossible to rely on the history of attorneys' fees awards in other cases. Also, the Fifth Circuit's opinion does not indicate how a district court is to use the list, how a court is to attach a relative weight to the different factors in determining an award.

The other case, Lindy Bros. Bldrs., Inc. of Phila. v. American R. and S. San. Corp., 487 F.2d 161 (3rd Cir. 1973) (concerning attorneys' fees in an antitrust action), suggests, *inter alia*, that a district court first determine fees in terms of actual hours worked and normal billing rates and, then, modify this sum in light of the contingent nature of success and of the quality of the attorneys' work. The Third Circuit's approach does present a procedure for ordering the examination of factors. It thereby complements the discussion offered in *Johnson*. But, the approach might present problems in specific cases. The variable factors—the contingent nature of success and the quality of the attorneys' work—oftentimes will be interrelated. For example, an increase in the attorneys' fees because the chances of success (and for fees) at the beginning of litigation appeared slight is implicitly if not explicitly an increase due to the high caliber of the attorneys' representation. Thus, consideration of different factors, without recognition of their overlap, might unintentionally lead to an unnecessary inflation of the attorneys' fees award.

This court, following the suggestion of the Ninth Circuit, intends to consider many of the factors listed in *Johnson* within a modified version of the framework offered in *Lindy Bros*. Specifically, the court will consider: the amount of time devoted by the attorneys to the litigation; the value of the time in light of billing rates and of the attorneys' experience, reputation, and ability; and the attorneys' performance, given the novelty and the complexity of the legal issues in the litigation. This considera-

tion will be grounded upon the court's opportunity to view the attorneys' work during the course of litigation and upon the information provided by the parties in their numerous briefs and affidavits. Fortunately, the court has access to the detailed, factual information necessary to reach an informed decision on the issue. *Cf.* Lindy Bros. Bldrs., Inc. of Phila. v. American R. and S. San. Corp., *supra*, at 169.

### The Time Devoted to the Litigation

■ Plaintiffs' attorneys, by affidavits, have itemized over 750 hours of working time spent on this litigation. This itemization does not include time spent either by Anthony Amsterdam, Professor of Law at Stanford Law School, or by a law student and a law clerk who researched various legal issues and assisted in the factual investigation.[1]

Defendants do not challenge the accuracy of the time records submitted by plaintiffs' attorneys but do contend that the attorneys spent an unreasonable number of hours on the case.

■ Defendants complain about the amount of time devoted to specific projects, such as the formulation of the complaint, about the use of attorneys for factual investigations and at depositions, and about the appearance of more than one attorney at court hearings and conferences. Clearly, attorneys should not be compensated for unnecessary work. *See* Canon 2 of the Code of Professional Responsibility of the American Bar As-

sociation, Disciplinary Rule 2–106. Attorneys should attempt to minimize duplication of their efforts. *See, e. g.*, Pacific Coast Agric. Export Ass'n v. Sunkist Growers, Inc., 1973 Trade Case. §§ 74,523, at 94,344 (N.D.Cal.1973); Bowl America Inc. v Fair Lanes, Inc., 299 F.Supp. 1080, 1100 (D.Md.1969); Advance Business Systems and Supply Co. v. SCM Corp., 287 F.Supp. 143, 161 (D. Md.1968). This court, however, finds that a careful review of the time records provides no ground for exclusion of any of the attorneys' time in calculating reasonable attorneys' fees. The facts of the case, the legal issues involved in its resolution, and arguments advanced by defendants required the number of hours of time which plaintiffs' attorneys expended.[2] This conclusion receives indirect support from the simple fact that plaintiffs' attorneys, who had no assurance that attorneys' fees would eventually be granted, had incentive to minimize rather than maximize the amount of time spent on the case. Their work on this case necessarily reduced their opportunity for work on other legal matters for which fees were guaranteed.

■ Defendants also contend that the attorney time devoted to the question of the propriety of awarding attorneys' fees should not be counted in setting the award. This contention does not square with federal court decisions which make no distinction, in calculating fees, between attorney hours spent on the merits and on the issue of counsel fees. *E. g.*, Miller v. Amusement Enterprises, Inc.,

1. The attorneys' decision to not seek compensation for certain individual's hours, whatever their motivation, does not lessen their burden of establishing the reasonableness of the number of hours for which they do seek compensation. Their decision may have the effect of lightening defendants' liability, but it does not eliminate the need for close court scrutiny of their hours. On the contrary, the court now must determine the reasonableness of the hours in light of the fact that the attorneys did not construct their case solely within the hours for which

they claim compensation. See discussion infra.

2. The large number of hours expended by plaintiffs' attorneys was necessitated not only by their claims but also from a need to counter the defendants' numerous affirmative defenses to the complaint and various motions. The court does not base its calculations of a fees award on the assumption that defendants acted in bad faith or with dubious motives. Rather, the court simply notes that the strategy adopted by defendants added hours to plaintiffs' work.

426 F.2d 534, 539 (5th Cir. 1970). The contention, if accepted, would allow parties to dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.

■ Defendants additionally argue that the attorney time expended on plaintiffs' motion for a preliminary injunction should be excluded from the fee calculation. This motion, which was made after a declaratory judgment had been entered and the issue of attorneys' fees had been resolved, evidently was triggered by plaintiffs' fear that a police search of the Stanford Hospital evidenced defendants' intention to violate the spirit if not the letter of the court's judgment. The motion was denied by minute order—but only after defendant Bergna represented to the court that defendants would not engage in searches of the premises of newspapers. The minute order, it should be noted, referred to this representation.

Some federal court decisions reason that hours spent on the litigation of unsuccessful claims should be deducted from the number of hours upon which an attorneys' fee award is computed. See Bowl America Inc. v. Fair Lanes, Inc., 299 F.Supp. 1080, 1100 (D.Md. 1969); Osborn v. Sinclair Refining Co., 207 F.Supp. 856, 864 (D.Md.1962), rev'd and remanded on other grounds, 324 F. 2d 566 (4th Cir. 1963). However, several recent decisions, adopting a different tack, deny fees for clearly meritless claims but grant fees for legal work reasonably calculated to advance their clients' interests. These decisions acknowledge that courts should not require attorneys (often working in new or changing areas of the law) to divine the exact parameters of the courts' willingness to grant relief. See, e. g., Trans World Airlines v. Hughes, 312 F.Supp. 478 (S.D.N.Y.1970), aff'd with respect to fee award, 449 F.2d 51 (2nd Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). One Seventh Circuit panel, for example, allowed attorneys' fees for legal services which appeared unnecessary in hindsight but clearly were not "manufactured." Locklin v. Day-Glo Color Corporation, 429 F.2d 873, 879 (7th Cir. 1970) (concerning fees for antitrust counterclaims).

Plaintiffs' attorneys obviously were not manufacturing legal services in constructing their preliminary injunction motion. They did not secure the full, injunctive relief which they originally requested, but they did obtain a significant concession from defendants as a result of their motion. In the process, they substantially advanced their clients' interests. The court finds that the attorney time spent on this motion (approximately 50 hours) should be counted in determining a proper award.

### The Value of the Attorneys' Services

■ Plaintiff's attorneys, by affidavit, provide information concerning their individual billing rates for fixed-fee services. The attorneys bill their clients at rates which range from $50 to $65 an hour.

This court does not accept the attorneys' usual billing rates as definitively fixing their billing rates for this litigation. This reluctance follows from the simple fact that attorneys may be leaving the area of their professional expertise in taking on pro bono publico litigation and that, as a result, their billing rates should reflect this fact. As an example, large-firm attorneys who draw $65 an hour for their specialized knowledge of securities regulation should not earn the same figure for § 1983 litigation, unless they have an equivalent type of specialized knowledge of civil rights litigation. Cf. Johnson v. Georgia Highway Express, Inc., supra, 488 F.2d at 717–720; Lindy Bros. Bldrs., Inc. of Phila. v. American R. and S. San. Corp., supra, 487 F.2d at 167.

In the instant case, plaintiffs' attorneys charge at rates which, in this

court's experience, compare favorably with the rates charged by other attorneys in this area for work involving complex questions of fact and law. Also, these rates reflect the attorneys' expertise: each of plaintiffs' attorneys has had considerable experience with civil rights litigation, and their hourly rates fairly reflect their experience.

Defendants Bergna and Brown, undoubtedly recognizing the excellent academic and professional backgrounds of plaintiffs' attorneys, concede that use of the billing rate of $50 an hour in calculating reasonable attorneys' fees would be appropriate. This figure is only $1.70 an hour less than the average hourly rate which plaintiffs' attorneys recommend to the court.

In light of these facts, the court finds $50 an hour to be an appropriate average hourly rate for use in calculating an award of reasonable attorneys' fees.

### Attorneys' Performance

#### 1. The Contingent Nature of Success

Plaintiffs' attorneys argue that they assumed this case on a contingent fee basis. They contend that any attorneys' fees award, initially computed on the basis of number of work hours times the average hourly billing rate, must be increased to reflect the contingent nature of their recovering any award.

Federal court decisions generally reason that the amount of any award of attorneys' fees should reflect any contingencies which stood between the attorneys and their deserved fee. *E.g.*, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir. 1974); Lindy Bros. Bldrs., Inc. of Phila. v. American R. and S. San. Corp., 487 F.2d 161, 168 (3rd Cir. 1973); Freeman v. Ryan, 133 U.S.App.D.C. 1, 408 F.2d 1204, 1206 (1969); State of Illinois v. Harper and Row Publishers, Inc., 55 F.R.D. 221 (N. D.Ill.1972). These decisions parallel the American Bar Association's determination that attorneys deserve higher compensation for contingent than for fixed-fee work. *Cf.* Canon 2 of the Code of Professional Responsibility of the American Bar Association, Disciplinary Rule 2–106(B)–(8) (1969).

From the attorneys' standpoint, the contingent fee insures that counsel are compensated not only for their successful efforts but also for unsuccessful litigation. Its use allows attorneys—including attorneys who could not otherwise absorb the costs of lost cases—to take the financial gamble of representing penurious clients, since, over the long run, substantial fees awards in successful cases will provide full and fair compensation for all legal services rendered to all clients. From the public's standpoint, the contingent fee helps equalize the access of rich, middle-class, and poor individuals to the courts by making attorney decisions concerning representation turn on an action's merits rather than on the size of a client's income. Courts' application of the doctrine in the aid of "private attorneys general" helps attract attorneys to the enforcement of important constitutional principles and significant congressional policies which might otherwise go unrepresented. Comment, Court Awarded Attorney's Fees and Equal Access to the Courts, 122 U.Pa.L.Rev. 636, 650–652, 708–711 (1974).

Federal courts' failure to make contingency calculations in determining fees awards, in contrast, would discourage many attorneys from accepting pro bono publico cases by presenting them with the financially unacceptable "risk of wasting hours of work, overhead and expenses" over a course of successful and unsuccessful civil actions. Angoff v. Goldfine, 270 F.2d 185, 189 (1st Cir. 1959).

Of course, the contingent fee doctrine has its genesis in the type of litigation in which the victorious plaintiff collects monetary relief from his adversary. The attorney accepts a case on the prom-

ise that he will share in whatever monies the plaintiff secures. The size of his share principally depends on the strength of the case: usually the stronger the case the smaller the attorney's share. The genesis of the doctrine does not preclude its use in the type of litigation in which the plaintiff obtains equitable but not monetary relief and the court retains the authority to order defendants to pay for the value of plaintiff's legal services. The doctrine, after all, does not concern the source of payment for legal services, but rather the size of the payment. The doctrine simply suggests that the contingent nature of compensation be considered in assessing the reasonableness of any fee.

Plaintiffs' attorneys correctly label this action as justifying the application of the contingent fee doctrine: at the beginning of the litigation, they could have expected an award of attorneys' fees only if this court ruled in plaintiffs' favor on the merits, only if the court ruled an award of fees appropriate, and only if the Ninth Circuit, and perhaps the Supreme Court, affirmed these determinations. Plaintiffs' attorneys conducted the litigation in the face of these contingencies, expending a significant number of attorneys' hours and absorbing the necessary costs of the case without any hope of certain payment.

Admittedly, the attorneys were guaranteed payment by their clients for some of the hours which they worked. The attorneys accepted the case only after The Stanford Daily agreed to pay $5,000 plus whatever funds they could raise from interested third parties. In the end, the attorneys received $8,500 from their clients. These payments, of course, were not dependent on the vagaries of the litigation. However,

the attorneys clearly were not guaranteed payment for most of the hours which they expended. At the beginning of the litigation, they undoubtedly realized that full payment for their services depended on the unforeseeable turns of the litigation process working in their clients' favor. In short, the fact that a fraction of their fees were guaranteed should not obscure the fact that the remainder was contingent on their success.[3]

Clearly, this court must increase the fees award obtained by multiplying the number of work hours by the average billing rate to reflect the fact that the attorneys' compensation, at least in part, was contingent in nature.

### 2. The Attorneys' Work

Plaintiffs maintained this civil action in an attempt at securing "the vindication of important constitutional rights." The Stanford Daily v. Zurcher, 366 F. Supp. 18 (N.D.Cal.1973). Their attempt necessarily entailed their attorneys' construction of complex, and convincing, legal arguments which would justify the extrapolation of traditional Fourth Amendment standards to a novel fact situation. They could not rely solely on the "very few cases [which] discuss Fourth Amendment protection of third parties"; they could not cite to "any case which discusses the problem of when law enforcement agencies must use a subpoena duces tecum rather than a search warrant." The Stanford Daily v. Zurcher, 353 F.Supp. 124, 127 (N.D. Cal.1972). Rather, they faced the task of breaking fresh ground in securing a novel application of an old constitutional principle.

The novelty of the issues in a case does not automatically increase the

---

3. This court assumes that plaintiffs' attorneys did not expect their clients to finance most of, let alone all of, their efforts. The facts of the case warrant this assumption. However, it should be noted that plaintiffs' attorneys admit that they did not expect to spend the large number of hours of work which the litigation eventually required when they accepted the case. Thus, hindsight may make the litigation take on a contingent flavor which is partially unjustified.

number of hours of work which attorneys must expend. "An area of the law which is barren of precedent may eliminate many hours of research and preparation otherwise needed. It may also necessitate a more time-consuming search for analogous authority." United States v. Gray, 319 F.Supp. 871, 873 n.2 (D.R.I.1970). But, novelty often does transform the practice of law into "an art in which success depends as much as in any other art on the application of imagination—and sometimes inspiration —to the subject-matter." Woodbury v. Andrew Jergens Co., 37 F.2d 749, 750 (S.D.N.Y.1930), quoted with approval, Sampsell v. Monell, 162 F.2d 4, 6–7 (9th Cir. 1947). This case, in fact, posed this type of challenge.

Plaintiffs' attorneys reacted to the challenge in an admirable fashion: their presentation of issues, both in written papers and in oral argument was good; their illumination of the controlling constitutional principles was excellent; their advocacy of their clients' interests was thoughtful. Additionally, the attorneys reacted well to defendants' maneuvers, offering legal research of high quality in response to defendants' answer and motions.

This court, in short, notes that plaintiffs' attorneys provided excellent legal services and that they, for the most part, successfully advanced their clients' interests. These facts weigh in favor of increasing the fees award. *See* George D. Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv.L.Rev. 658, 660–661 (1956). However, another fact suggests restraint in increasing the award.

Plaintiffs' attorneys, as noted *supra*, do not seek compensation either for the time of Professor Anthony Amsterdam or for the work of a law student and a law clerk. The attorneys estimate, in an affidavit, that Professor Amsterdam expended not less than 75 hours on the litigation. The court notes that his participation in oral argument greatly facilitated the court's resolution of some of the complex legal issues of the case. Also, the court assumes that the high quality of plaintiffs' written work can be traced, at least in small part, to his hours on the case. The attorneys state that a law student and a law clerk engaged in substantial work on the litigation and note that one law student researched the crucial Fourth Amendment issues which controlled the course of the litigation. Again this court assumes that the student and the clerk helped the attorneys assemble their excellent case.

This court cannot adjust the fees award to reflect the quality of the attorneys' work without taking into account the fact that the award will not go to some of the individuals who performed significant legal services and who may be partially responsible for the general excellence of the attorneys' work. Rather, the court must adjust the award so that the attorneys who actually will share in the award will be compensated, as near as possible, only for their contribution to the litigation. This approach attempts to avoid any unreasonable enrichment of the attorneys who ask the court for fees.

With this caveat in mind, the court finds that the attorneys' work, and the results which they obtained through their work merit an increase in the base figure upon which a reasonable attorneys' fees award is computed.

### Conclusion

The court finds that plaintiffs' attorneys devoted approximately 750 hours to the prosecution of this action on behalf of their clients and that this figure does not reflect the time expended by Professor Anthony Amsterdam and by certain other individuals. The court finds no reason to exclude any of the time in determining a reasonable fees award.

The court also finds that $50.00 an hour is an appropriate average billing rate for use in determining a reasonable award.

The court also finds that the contingent nature of compensation, the quality of the attorneys' work, and the results obtained by the litigation warrant increasing the base fees figure (hours worked times average billing rate) in determining the award.

Accordingly, plaintiffs' attorneys are awarded fees in the sum of $47,500.

So ordered.