**SAVE OUR SOUND FISHERIES ASSOCIATION**

v.

**Howard A. CALLAWAY et al.**

**Civ. A. No. 5297.**

United States District Court,
D. Rhode Island.

Feb. 23, 1977.

Ernest C. Torres, East Greenwich, R.I., John R. Allen, Providence, R.I., for plaintiff.

Everett Sammartino, Asst. U.S. Atty., Providence, R.I., Lloyd S. Guerci, Pollution Control Section, Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., John F. Dolan, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

Plaintiff moves for an award of attorneys' fees and costs pursuant to the Federal Water Pollution Control Act of 1972 (FWPCA), 33 U.S.C. § 1365(d) (Supp.1976), and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPRSA) 33 U.S.C. § 1415(g)(4) (Supp.1976.)[1]

The action giving rise to the motion was brought to enjoin defendants, the Secretary of the Army and the Chief of the Corps of Engineers of the United States Army, as well as a private corporation retained under government contract, from dumping dredged spoil at an ocean site off Rhode Island coastal waters without proper permits. An order issued enjoining further dumping in certain areas of those waters until such time as public hearings were held, and permits were issued and complied with. *See Save Our Sound Fisheries Association v. Callaway* (hereinafter *SOSF I*), 387 F.Supp. 292 (D.R.I.1974). It is undis-

---

1. Plaintiff also relies on a common law theory for an award of attorneys' fees, citing *Natural Resources Defense Council v. Environmental Protection Agency*, 484 F.2d 1331 (1st Cir. 1973). However, the award of fees in that case was statutorily based as well. Insofar as that case relief on the private attorney general theory, it has been overruled by *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). It is not contended that plaintiff fits within the bad-faith exceptions outlined in *Alyeska, supra*; nor would the evidence support such a contention. *See Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256 (1st Cir. 1976).

puted now that the said injunction prohibited defendants from dumping about 50,000 cubic yards of dredge material at a location where eight million cubic yards from the same project had already been dumped in previous years. The government has now complied with the court order. A hearing has been held, a new location adopted, and the dumping of material dredged from the Providence River project has continued without further objection from plaintiff.

*Jurisdiction to Award Attorneys' Fees*

 Without specific authorization federal courts are not free to award attorneys' fees to prevailing parties except in certain narrow circumstances not relevant here.

2. The relevant portions of 33 U.S.C. § 1365, authorizing citizen suits and awards of attorneys' fees and costs, provide:

§ 1365. *Citizen suits—Authorization; jurisdiction*

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

*Notice*

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or or-

*See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, Congress has passed an increasing number of remedial statutes which specifically provide for the award of attorneys' fees to litigants. *See e. g., id.,* at 260 n. 33, 95 S.Ct. 1612. The possibility of such fees serves as an incentive for private parties to enforce provisions of various statutes deemed too important to be left to the limited enforcement resources of the Justice Department.

Both the FWPCA and the MPRSA grant federal courts jurisdiction over such "citizen suits", and provide in almost identical language for awards of attorneys' fees and costs.[2] Defendants argue that since this

der, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

*Statutory or common law rights not restricted*

(e) Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

*Effluent standard or limitation*

(f) For purposes of this section, the term "effluent standard or limitation under this chapter" means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under section 1341 of this title; or (6) a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title).

The relevant portions of 33 U.S.C. § 1415(g), authorizing citizen suits and awards of attorneys' fees and costs, provide:

Court has previously based jurisdiction over this matter on the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1967), and on 28 U.S.C. § 1331 (1966), the citizen suit jurisdictional provisions, which authorize attorneys' fees, are inapplicable. In *SOSF I,* the Court stated:

> Jurisdiction having been properly premised on the APA, 5 U.S.C. § 702, and on 28 U.S.C. § 1331(a), this Court need not reach the question of the applicability of the "citizen suit" provisions of both the FWPCA, 33 U.S.C. § 1365, and the MPRSA, 33 U.S.C. § 1415(g).

> 387 F.Supp. at 298. *See also id.,* at 300 n. 9.

The Court passed the question of jurisdiction grounded directly on FWPCA and MPRSA, although it was properly presented and fully briefed, because jurisdiction for the purposes of injunctive relief was properly grounded otherwise. The Court thus avoided the difficult jurisdictional questions posed in applying the requirements of 33 U.S.C. § 1365 and § 1415(g) to the facts of this case. Other courts have since followed this Court's lead. *See, e. g., Natural Resources Defense Council v. Callaway,* 524 F.2d 79, 83 (2nd Cir. 1975); *Natural Resources Defense Council v. Train,* 166 U.S.App.D.C. 312, 510 F.2d 692, 702 (1974); *State of Minnesota, Spannaus v. Callaway,* 401 F.Supp. 524 (D.Minn.1975). None of

these opinions, finding jurisdiction over FWPCA and MPRSA claims under 28 U.S.C. § 1331, discussed the problems of awarding attorneys' fees, as provided by the FWPCA and MPRSA, when jurisdiction is thus acquired.

■ One possible approach, reading attorneys' fees provisions as applying to all suits brought to enforce the statutes, whether premised on the citizen suit provisions, § 1365 and § 1415(g), or otherwise, i. e. § 1331, is firmly foreclosed by the language of citizen suit provisions and their legislative history. Section 1365(d), for example authorizes courts to award fees and costs "in issuing any final order in any action *brought pursuant to this section* [1365]" (emphasis added.) Had Congress wished to induce private enforcement of all of the FWPCA's provisions, it could easily have done so by changing "pursuant to this section [1365]" to "pursuant to this Act". The legislative history shows without doubt that Congress sought to induce citizen suits with awards of attorneys' fees to remedy only specified acts of polluters and the Administrator of the Environmental Protection Agency (hereinafter, the Administrator). Jurisdiction over suits challenging other actions, illegal under the statutes, is not available under the citizen suit provisions. *See* 33 U.S.C. § 1365(a)(1)(A)–(B)(2); S.Rep. 92–414, 92nd Cong., 2nd Sess., re-

---

*Civil suits by private persons*

(g)(1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any prohibition, limitation, criterion, or permit established or issued by or under this subchapter. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such prohibition, limitation, criterion, or permit, as the case may be.

(2) No action may be commenced—

(A) prior to sixty days after notice of the violation has been given to the Administrator or to the Secretary, and to any alleged violator of the prohibition, limitation, criterion, or permit; or

(B) if the Attorney General has commenced and is diligently prosecuting a civil action in

a court of the United States to require compliance with the prohibition, limitation, criterion, or permit; or

(C) if the Administrator has commenced action to impose a penalty pursuant to subsection (a) of this section, or if the Administrator, or the Secretary, has initiated permit revocation or suspension proceedings under subsection (f) of this section; or

(D) if the United States has commenced and is diligently prosecuting a criminal action in a court of the United States or a State to redress a violation of this subchapter. . .

(4) The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

printed in 1972 U.S.Code Cong. and Admin. News, p. 3747. A savings clause makes possible suits under the Administrative Procedure Act and 28 U.S.C. § 1331 to remedy a broad range of illegal actions under the FWPCA and MPRSA; but the normal American rule on attorneys' fees applies to such suits. *See* 33 U.S.C. § 1365(e); 33 U.S.C. § 1415(g)(5). *See also Natural Resources Defense Council v. Train, supra,* at 699–701. *Cf. Citizens Ass'n of Georgetown v. Washington,* 175 U.S.App.D.C. 356, 535 F.2d 1318, 1320 (district court may not award fees where jurisdiction over claims arising under the Clean Air Act is based on 28 U.S.C. § 1331 rather than on citizen suit provisions).[3]

Plaintiffs contend that *SOSF I* did not dispositively reject jurisdiction premised on the citizen suit provisions of the FWPCA and MPRSA. The Court agrees. In *SOSF I,* there was no need to reach the difficult question of whether the formal notice requirements of §§ 1365 and 1415(g) are a strict jurisdictional bar on the maintenance of this suit under those provisions. *SOSF I, supra,* 387 F.Supp. at 298, 300 n. 9. Because plaintiff's request for attorneys' fees can be granted only if such jurisdiction exists, such an inquiry is now necessary.

Both §§ 1365 and 1415(g) authorize citizen suits against limited categories of violations. Sixty-day notice of the alleged violation to the Administrator, the alleged violator, and the State in which the violation

occurs (FWPCA), or the Secretary of the Army and the violator (MPRSA) is a prerequisite to the maintenance of such suits, with certain exceptions described *infra.*[4] The suit at bar challenged violations of the FWPCA and MPRSA for which citizen suits are authorized.[5] Therefore, an award of attorneys' fees is authorized only if the notice requirements were met or were inapplicable. Two basic theories have been advanced to justify the Court's holding that it has jurisdiction to award attorneys' fees in this case.

 A. The 60–day notice requirement in § 1365(b) does not apply to actions respecting violations of §§ 1316 or 1317(a). 33 U.S.C. § 1365(b). Pointing to paragraph 8 of their amended complaint,[6] plaintiffs argue that they have sought to remedy a violation of § 1317(a). The Court rejects this argument. Paragraph 8 challenges illegal dumping; but section 1317(a)(5) does not prohibit illegal dumping. It merely directs the Administrator to designate categories of sources (including dumping of dredged material) to which effluent standards will apply. Violations of § 1317(a) consist solely of the failure of the Administrator to issue and publish lists, categories, and standards. Substantive violation of those standards by polluters is not covered by § 1317(a), but rather by § 1317(d). Thus, paragraph 8 does not allege a violation of § 1317(a) justifying this Court's jurisdiction in the absence of 60–days' notice of the violation to the necessary parties.[7] Indeed,

---

**3.** The citizen suit provisions of both the FWPCA and MPRSA are modelled closely on the citizen suit provisions of the Clean Air Act, 42 U.S.C. § 1857h–5 (1970), and the legislative history of the Clean Air Act has been held to be a proper source for help in ascertaining Congressional thinking in passage of the FWPCA (and MPRSA). *See Natural Resources Defense Council v. Train,* 166 U.S.App.D.C. 312, 510 F.2d 692, 699–702 (1975).

**4.** *See* 33 U.S.C. § 1365(b)(1)(A) (FWPCA); 33 U.S.C. § 1415(g)(2)(A) (MPRSA). These provisions are cited *supra,* note 2. Notice under the MPRSA may go to the Administrator in lieu of the Secretary of the Army.

**5.** Plaintiffs complained, and the Court found, that defendants had violated effluent standards or limitations cognizable under 33 U.S.C. § 1365(a)(1)(A), as defined in § 1365(f). *See*

*Save Our Sound Fisheries Ass'n v. Callaway,* 387 F.Supp. 292, 299 n. 6. (D.R.I.1974). They also alleged, and the Court found, a violation of prohibitions cognizable under 33 U.S.C. § 1415(g)(1). *See Save our Sound Fisheries Ass'n v. Callaway, supra,* 387 F.Supp. at 299 n. 6. The cited statutory provisions can be found *supra,* note 2.

**6.** Upon information and belief, the dredged spoil defendants proposed to dump contains polluted and toxic materials the dumping of which will violate applicable effluent and water quality standards and ocean dumping criteria established by The Environmental Protection Agency and the State of Rhode Island.

**7.** The reasoning behind Congress' decision to permit suits against the Administrator immediately, but to require 60-days notice for suits

as of August 1973, there were as yet no relevant standards issued pursuant to § 1317(a) for which paragraph 8 could have alleged a violation. *See NRDC v. Train,* 8 E.R.C. 2120 (D.D.C. Nos. 73–2153 *et seq.,* June 8, 1976).

■ Nor does paragraph 8 of plaintiff's amended complaint, *supra,* properly allege a violation of any portion of § 1316 so as to fall within § 1365(b)'s waiver of the 60–day notice requirement. Section 1316(e), the only arguably relevant subsection, provides:

After the effective date of standards of performance promulgated under this section, it shall be unlawful for any owner or operator of any new source to operate such source in violation of any standard of performance applicable to such source.

However, the only standards of performance to which the Court has been directed are those published at 38 Fed.Reg. 8725 and 12871 (April 5, 1973 and May 16, 1973).[8] These regulations are entitled "Ocean Dumping," and are explicitly issued pursuant to title I of the MPRSA and § 403(c) of the FWPCA (33 U.S.C. § 1343(c)). Since these regulations are not promulgated under § 1316, allegations that they have been

violated cannot serve to authorize suit absent 60–days notice.[9]

■ Because plaintiff's complaint does not properly allege violations of either § 1316 or § 1317(a), the Court concludes that plaintiff has not brought itself within the narrow exceptions to the 60–day notice requirement set forth in § 1365(b).

B. Plaintiff also contends that the 60–day notice provision of §§ 1365(b) and 1415(g)(2) should be deemed either satisfied, or not jurisdictional, in the narrow circumstances presented here. For the reasons stated below, the Court agrees that the notice requirement must be considered satisfied. This finding serves to ground jurisdiction under citizen suit provisions of both the MPRSA, 33 U.S.C. § 1415(g), and the FWPCA, 33 U.S.C. § 1365.

The Court will refer interchangeably to the citizen suit provisions of the FWPCA and MPRSA, since the relevant provisions and the legislative history regarding these provisions are virtually identical.

■ Two major Congressional concerns regarding citizen suits stand out from the legislative history of §§ 1365 and 1415(g). First, Congress thought it vital to supple-

---

against polluters for violation of § 1317(a) standards, is apparent. Although Congress gave the administrator 60 days to attempt to stop violations by polluters before judicial action could be sought, it decided that the Administrator did not need 60 days of warning that his own failure to establish standards put him out of compliance. The Court notes that the Administrator is not a party to this action.

8. These regulations were formerly found in final form at 40 C.F.R. §§ 220–227 (1976). They have since been revised, *see* 42 Fed.Reg. 2462 (January 11, 1977).

9. Plaintiff's claim that testing of dredged and dumped materials in the project at issue in this case showed that they contained cadmium and mercury, in violation of the Ocean Dumping regulations, is beside the point. Congress has decided that citizen suits to remedy those regulations are subject to a 60–day notice requirement. *See,* e. g., 33 U.S.C. § 1365(a), (b), and (f)(6); 33 U.S.C. § 1415(g).

In a supplementary memorandum, plaintiff offers another theory supporting its position that this suit challenges a violation of § 1316 and § 1317 and was therefore timely when filed in the absence of the 60-day waiting period.

Plaintiff argues that § 1365(a) authorizes suits against "effluent standards"; that 1365(f) defines "effluent standards" as "standard[s] of performance under section 1316 of this title" and "prohibition[s], effluent standard[s] . . under section 1317 of this title", 33 U.S.C. § 1365(f)(3) and (4); and therefore, that an allegation of violation of effluent standards as contained in paragraph 8 of the complaint, *supra,* is an allegation of a violation of §§ 1316 and 1317. Interesting as this theory is, the Court cannot accept it. "Effluent standards" may be defined in terms of violations of § 1316 standards, but the reverse is not true. The 60-day period is not waived, in the final version of the FWPCA, for violation of all effluent standards found in § 1316 and § 1317, *see* text accompanying note 7, *supra*; it is waived for violations of § 1316 and § 1317(a) themselves. Under plaintiff's theory, Congress' decision to specify that immediate jurisdiction would attach for suits challenging violations of § 1317(a), rather than each part of § 1317, is of no consequence. The Court must prefer a statutory interpretation which gives effect to all of the statutory language.

ment administrative enforcement of the statutes with enforcement by citizen suits. Second, Congress put strong reliance on administrative enforcement, generally allowing citizen enforcement only· after the Administrator had an opportunity to bring his powers of enforcement to bear on the polluter.[10] *See, e. g.,* S.Rep. No. 92–414, *supra,* 1972 U.S.Code Cong. and Admin. News, p. 3747. *Cf. Natural Resources Defense Council v. Train, supra,* 510 F.2d at 723–730.

It is a necessary inference from the 60–day waiting period itself, and the legislative history, that Congress chose to foreclose the possibility of judicial relief to remedy some actions, wrongful under the Acts, which the Administrator could not or would not remedy himself within the 60-day period. It was for Congress, after weighing the competing advantages of immediate citizen enforcement, and enforcement by the orderly processes of the Administrator, to decide how the Acts were to be enforced. The choice Congress made was at least permissible. Certainly it is not the province of this Court to disregard that Congressional decision.

However, in requiring citizens to notify the Administrator (in the case of the FWPCA violations alleged here) and the Secretary of the Army (in the case of the MPRSA violations alleged here) of any violation 60 days prior to bringing suit, Congress was also aware that the requirements of these and other Acts made it virtually certain that alert citizens would always be given more than 60 days' notice of actions that might violate FWPCA or MPRSA, so that the statutory waiting period could be

satisfied and court action commenced if necessary before the allegedly wrongful act would take place. Provisions of the National Environmental Policy Act of 1969 [NEPA], 42 U.S.C. § 4321–47 (1973), and the permit systems required by FWPCA and MPRSA comprehensively insured that citizens would always be given advance warning of major federal actions which might damage the marine environment.

Specifically, the guidelines of the Council on Environmental Quality, implementing NEPA, provide that a draft Environmental Impact Statement (EIS), which must be prepared for each major federal action, must be available for public evaluation for a full ninety days before the contemplated action can proceed. Guidelines, Council on Environmental Quality, 36 Fed.Reg. 7724029 (April 23, 1971). The MPRSA requires notice and public hearing before the Corps of Engineers may transport and dump dredged material. 33 U.S.C. § 1413. *See SOSF I, supra,* at 300–303. The FWPCA requires notice and public hearing before the Secretary of the Army, acting through the Chief of the Corps of Engineers, may issue permits for the discharge of dredged material into navigable waters. 33 U.S.C. § 1344. *See SOSF I, supra,* at 304–307.

Had defendants complied with even one of these statutes, plaintiff would clearly have been able to satisfy the requirements of 40 CFR § 135.3 (1973), § 1365(b), and § 1415(g) to the letter. It is undisputed that plaintiff had a long-standing concern in the project at issue, notifying the Corps of that concern as early as January 26, 1972, and requesting hearings on the proposed dredging and dumping.[11] *See gener-*

10. Each act contains a savings clause, which authorizes jurisdiction under either the Administrative Procedure Act or 28 U.S.C. § 1331. *See, e. g., Natural Resources Defense Council v. Train,* 166 U.S.App.D.C. 312, 510 F.2d 692 (1975). However, actions brought under these other statutes are less attractive because of the unavailability of attorneys' fees. *See* text accompanying note 3 *supra.*

11. As the defendants point out, the letter of January 26, 1972 is a strange notice under FWPCA and MPRSA, since neither Act existed

at the time. Furthermore, plaintiff was not officially incorporated until July 27, 1973. On the other hand, plaintiff's counsel had long represented the unincorporated groups later incorporating as the Save Our Sound Fisheries Association prior to the institution of this suit. Plaintiff's counsel had demonstrated longstanding and close interest in the dumping of dredged materials at issue here on behalf of his clients. Although defendants make much of the failure of this notice, or even the notice of August 1, 1973, to comply with the formal requirements of 40 CFR § 135.3 (1973), the

*ally SOSF I, supra.*

Even leaving aside, for the moment, the permit requirements of the FWPCA and MPRSA, deliberately bypassed here, the CEQ guidelines gave plaintiff a clear expectation that the dredging contract could not be awarded by the Corps until at least a month after August 25, 1973, 90 days after filing of the *draft* EIS on May 25.[12] And plaintiffs could reasonably expect further delay, since the Corps generally proceeded by issuing a separate notice-to-proceed letter some time after the awarding of the contract, contemplating commencement of the work within thirty days.

Nevertheless, as the Court found in *SOSF I,* defendants violated NEPA, FWPCA, and MPRSA, and awarded the contract on June 24, 1973. A notice-to-proceed letter followed on July 24. Plaintiff's counsel, unaware that the contract had been awarded, wrote on July 12 to the Corps, requesting information on the status of the project, and was notified by a letter dated July 23 (the day before the Corps issued the notice-to-proceed letter) that the contract had been awarded. Plaintiff thereupon on August 1 filed formal notice with the necessary parties, as required by §§ 1365(b) and 1415(g), and commenced this action on August 7.

In the face of these facts, the government contends that there is no jurisdiction under the citizen suit provisions because plaintiff failed to comply with the 60–day waiting period. Under the government's view of the case, although plaintiff would have been able to comply with the requisite notice precedent to filing a citizen suit had the Corps complied with NEPA, FWPCA, and MPRSA, the Corps' violation of these three important statutes effectively removed plaintiff's opportunity to maintain a citizen suit under the Acts, until the damage sought to be avoided would have been largely accomplished. This Court cannot sanction such a transparent attempt to undermine Congressional policies and intention. The government's view turns all three Acts on their heads. The Court does not believe that Congress wished the courts to interpret the jurisdictional provisions of §§ 1365(a) and 1415(g) in such a crabbed manner. The Court finds, in the narrow circumstances here presented, that plaintiff's expressed interest and concern about the dredging project, presented to the Corps as early as January 26, 1972, constructively satisfied the requirements of §§ 1365(a) and 1415(g).[13]

The government contended vigorously at oral argument that *Commonwealth of Massachusetts v. United States Veterans Ad-*

Court finds that defendants were aware of the precise violations complained of more than sixty days prior to the filing of this action.

**12.** The final EIS was not filed until October 17, 1973. The applicable CEQ guidelines provide that actions such as the one at issue here are not to be taken sooner than 30 days after the final text of an EIS is made publicly available. *See Save Our Sound Fisheries Ass'n v. Callaway, supra* note 5, at 308 n. 22. Thus, plaintiff's notice of August 1 was well within sixty days of the earliest date at which the government was legally permitted to proceed with the dumping of dredged materials in this case. *See Save Our Sound Fisheries Ass'n v. Callaway, supra* note 5, at 308–310.

**13.** Although the Court of Appeals for the District of Columbia has indicated that failure strictly to comply with the requirements of the 60–day waiting period, when applicable, may defeat jurisdiction, *Cf. Citizens Ass'n of Georgetown v. Washington, supra,* the Second Circuit has left the question open. In *Natural*

*Resources Defense Council v. Callaway, supra,* the court indicated that where the purpose of the waiting period was served by adequate notice (not meeting the formal requirements of 40 CFR 135.3 (1973)), jurisdiction under § 1365 might still be proper. *Id.,* 524 F.2d at 84 n. 4 ("there is, furthermore, a strong additional argument for finding jurisdiction under [§ 1365(a)], since the purpose of the 60–day waiting period . . . has been served."); *id.,* 524 F.2d at 96 (Mulligan, J., dissenting) (jurisdiction exists under § 1365(a)) (semble). Plaintiff also contends that jurisdiction under the citizen suit provisions is proper because the defendants are estopped from relying on the 60–day notice period because of their actions. However, it seems apparent that the notice period is jurisdictional, and the Court cannot simply ignore its existence. *See Commonwealth of Massachusetts v. United States Veterans Administration,* 541 F.2d 119 (1st Cir. 1976).

*ministration*, 541 F.2d 119 (1st Cir. 1976) (Coffin, C. J.) controls this case, citing it for the proposition that failure strictly to comply with the 60–day notice requirement defeats jurisdiction. However, far from supporting defendant's position, the First Circuit in that case expressly agreed that there could be "constructive compliance" with the notice requirement in certain circumstances. *Id*, at 121–122. The Court believes that the instant case presents precisely the situation of constructive compliance adverted to by Chief Judge Coffin. The Court notes that at no time after suit commenced did the Secretary or the Administrator attempt to effect voluntary compliance in the spirit of the 60–day notice provision. Indeed, defendants' position throughout the case was not that it disagreed with a particular standard, or needed time to meet a particular standard—the classic situations where the 60–day administrative period may be efficacious—but rather that it did not need to comply with either Act at all. Both the Corps and the Administrator had far longer than 60 days to reach such an important (and mistaken) policy judgment.

Far from bypassing administrative procedures itself, plaintiff's complaint is precisely that the government agency-defendants had bypassed those procedures. Based on its knowledge of defendant's contentions during this lawsuit, the Court concludes that an attempt by plaintiff to seek administrative enforcement when it uncovered the fact that dredging was about to begin would indeed have been futile. This futility was guaranteed by defendant's own prior statements and actions making clear that, in their opinion, they were not bound by NEPA, FWPCA, or MPRSA.

For these reasons, plaintiff's suit is maintainable under the citizen suit provisions of §§ 1365 and 1415(g). The Court must next determine whether an award of fees is appropriate. *See* 33 U.S.C. § 1365(d); 33 U.S.C. § 1415(g)(4).

14. The facts of this case do not fit within the bad faith exception to the normal award of attorneys' fees not statutorily authorized. *See*

*Appropriateness of a Fee*

Defendants contend that the direction of §§ 1365(d) and 1415(g)(4) to award attorneys' fees "whenever the Court determines such award is appropriate" imposes on the courts a duty to balance a number of factors to determine whether a fee should be awarded or not, including, *inter alia*, whether the suit implements a strong public policy, the number of persons benefitting from the suit, and the relative economic position of the parties. This position is without merit.

As plaintiff correctly observes, all of the authority cited by defendants in support of their position relates to the propriety of awarding fees in the absence of an authorizing statute. *See, e. g., Harrisburg Coalition Against Ruining the Environment v. Volpe*, 381 F.Supp. 893 (M.D.Pa.1974). Such authority is inapposite to the case at hand. Although Congress has directed the Courts to award fees "as appropriate", the courts do not have the unfettered equitable discretion which courts drew upon under the now rejected equitable private attorney general theory. As the Supreme Court observed in *Alyeska, supra*,

> Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.

421 U.S. at 262, 95 S.Ct. at 1624.

In a similar situation, where Congress passed a remedial program and provided for enforcement in large measure through citizen enforcement, without the possibility of damages, the Supreme Court has ruled that the Congressional intention was that fees were to be awarded unless plaintiffs acted in bad faith, or litigated vexatiously. *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam). *Newman* is strong authority for this Court's holding that both the FWPCA and MPRSA contemplate the award of fees absent exceptional circumstances as detailed in *Newman, supra*.[14] As the Supreme Court said in *Newman*:

> *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256 (1st Cir. 1976).

When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only. When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.

*Id.* at 402, 88 S.Ct. at 966 (footnotes omitted).

■ The legislative history of both the FWPCA and MPRSA also amply support this holding. *See* S.Rep. No. 92–411,

*supra,* 1972 U.S.Code Cong. and Admin. News, p. 3747 (FWPCA); S.Rep. No. 92–451, 92nd Cong., 2nd Sess., 1972 U.S.Code Cong. and Admin.News, pp. 4249–50 (MPRSA).[15] *Cf. Natural Resources Defense Council v. Train, supra,* 524 F.2d at 723–730 (extracts of the congressional debate regarding attorneys' fees awards under the Clean Air Act.) The Court therefore holds, for the above reasons, that a fee award is appropriate.[16] *Cf. Natural Resources Defense Council v. Environmental Protection Agency,* 484 F.2d 1331 (1st Cir. 1973) (hereinafter *NRDC v. EPA* ).

### *The Size of the Fee*

■ In *Natural Resources Defense Council v. Environmental Protection Agency, supra,* the First Circuit granted an award of attorneys' fees to the NRDC pursuant to statutory authorization of the Clean Air Act. The court seemed to hold that the fee should be set at less than the prevailing rate:

As the government has not addressed in detail the question of the reasonableness of petitioners' requested sum, we now ask the parties to submit memoranda on that question. We will scrutinize carefully the requested costs and fees. Petitioners are not a public agency and are legally responsible to no one but themselves; we must satisfy ourselves that the taxpayers' money will not be used to support needless or excessive legal items. We must also recognize that petitioners, as surrogate attorneys for the

---

**15.** Despite defendants' arguments to the contrary, the economic position of the plaintiff is clearly irrelevant where Congress is interested in inducing private attorneys-general to enforce public statutes. *See Natural Resources Defense Fund v. Environmental Protection Agency,* 484 F.2d 1331, 1338 n. 7 (1st Cir. 1973). Where Congress sought to make the economic position of the plaintiff a factor in the court's decision to award fees, as defendants contend is here the case, it knew how to do so. *Compare* 33 U.S.C. § 1365(d) with 42 U.S.C. § 3612(c) (fees awarded only when plaintiff is not financially able to assume them.)

**16.** There are strong factors supporting the award of a fee here even under the broader, equitable test. The Court notes, for instance, the importance of the rulings gained by plaintiffs in this case, establishing the Corps of Engineers' duties under the permit provision of the FWPCA and MPRSA. The public benefits accruing from this lawsuit are not diminished by Court's decision that the question of violation of particular effluent standards did not have to be reached in this case. The final dumping of dredged material at issue here took place at a different location from that challenged by plaintiff as a violation of applicable standards.

interests of the public and the EPA, have volunteered and 'imposed' their services on 'clients' that never contracted for them. As attorneys for involuntary clients, their fees may properly be less than those they could have received by entering the marketplace and selling their services to the private client who would make the highest bid for them. 484 F.2d at 1339.

Although defendant has not suggested that this Court is bound by that holding, the Court believes it is appropriate to set forth the reasons why it does not consider this First Circuit decision controlling in the present case.

On October 19, 1976, President Ford signed into law S. 2278, providing for the award of attorneys' fees in the court's discretion, in certain civil rights actions. 42 U.S.C. § 1988, *reprinted in* 20 Crim.L.Rep. 2092 (October 27, 1976). The legislative history of the new provision details the Congressional concern with citizen enforcement of the civil rights statutes, and specifies four cases which it felt adequately found and applied the standards Congress wished to govern the award of attorneys' fees. These cases reject the position taken by the First Circuit in the attorneys' fees cases it has decided, *e. g., Souza v. Travisono,* 512 F.2d 1137 (1st Cir. 1975); *NRDC v. EPA, supra,* and rely instead on the decision of the Fifth Circuit in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974). Under the Fifth Circuit's approach, now approved by the Congress, fees are to be competitive with the prevailing rates in a community. As the Senate Report states,

It is intended that the amount of fees awarded under S. 2278 be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be

reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, see *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444 (C.D.Cal. 1974); and *Swann v. Charlotte-Mecklenburg Board of Education,* 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, "for all time reasonably expended on a matter." *Davis, supra; Stanford Daily, supra,* at 684.

S.Rep. No. 94–1011, 94th Cong., 2d Sess. (1976), at 6 U.S.Code Cong. & Admin. News 1976, pp. 5908, 5913.

Careful study of Senate Report No. 94-1011, *supra, Newman, Alyeska,* and the legislative history of the FWPCA and MPRSA convinces this Court that there is no principled distinction which would justify attributing to Congress an intention that fees be reduced in environmental cases, but not in civil rights cases. The Congressional interest in enforcement, exemplified by provision for citizen suits, is strong in both cases. The Supreme Court has agreed that the standards for fees are to be governed by seeking out Congressional intention, not by the unbridled equitable discretion of the courts. Therefore, the Court is convinced that it should adopt a rule in line with congressional intention as specified in the legislative history of 42 U.S.C. § 1988. The standards which govern the award of attorneys' fees in this case, under the FWPCA and MPRSA are those stated in *Johnson, supra,* and applied in the cases cited *supra.*[17]

---

**17.** The Court has considered *NRDC v. Fri,* 7 E.R.C. 1346 (D.D.C.1974) and *PROD v. Train,* 8 E.R.C. 1887 (D.D.C.1976), awarding fees in environmental cases at approximately the rate mandated by the Criminal Justice Act, 18 U.S.C. § 3006A (Supp.1976). The Court does not disagree with the reasoning of those cases, but finds them of no help to defendants here.

The decisions in both *Fri* and *PROD* relied on two factors: each case presented relatively simple issues, briefly fought, and in neither case could the judge find that the public benefit was more than marginal, or speculative. *SOSF I,* on the other hand, was a drawn-out, hard-fought case involving novel and difficult issues of statutory construction of newly-enacted en-

Should the parties be unable to agree as to either the correct fee per hour, or the number of hours for which plaintiff is entitled to be paid, the Court will hold a hearing at which plaintiff shall show, by competent evidence, the total fee to which it is entitled.

Plaintiff's motion for an award of attorneys' fees and costs is granted.

vironmental legislation. The public benefit accruing from this litigation, especially in terms of construing the duty of federal officials under both the FWPCA and MPRSA, has been substantial.