Gordon BAUGHMAN

v.

WILSON FREIGHT FORWARDING CO.

Civ. A. No. 72–466.

United States District Court,
W. D. Pennsylvania.

April 6, 1977.

John W. McIlvaine, Jr., Washington, Pa., for plaintiff.

Richard L. Rosenzweig, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION:

### PETITION FOR COUNSEL FEES BY PLAINTIFF'S ATTORNEY

KNOX, District Judge.

In this antitrust case which has been tried twice in this court and appealed to the United States Court of Appeals for the Third Circuit and in which thereafter certiorari was sought and denied from the United States Supreme Court, the court is now called upon to fix the amount of attorney's fees to be awarded the attorney for the plaintiff. See *Baughman v. Cooper-Jarrett, Inc., et al.*, 391 F.Supp. 671 (W.D. Pa.1975) modified 530 F.2d 529 (3d Cir. 1976).

In accordance with the requirements of the Third Circuit, in *Lindy I*, 487 F.2d 161 (3d Cir. 1973) as refined and explained in *Lindy II*, 540 F.2d 102 (3d Cir. 1976) the court has held an evidentiary hearing and will now articulate the reason for the action taken with respect to this petition.

It is of course obvious that the *Lindy* cases were somewhat different in that they involved allowance of attorney's fees based on the Equitable Fund Doctrine in a class action which had been settled. A large number of antitrust claimants were entitled to share in the fund and the circuit and the lower court considered it only proper that the other participants should share in the attorney's fees for securing the recovery. The same principles apply generally to a case of this kind where we have no settlement but a litigated claim versus one defendant which has been prosecuted to final judgment. See *Pitchford v. Pepi*, 531 F.2d 92 at 110 (3d Cir. 1976).

In addition to the *Lindy* cases, the court has also considered the decision of the Third Circuit in *Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975) where we are admonished not to be niggardly in antitrust counsel fees cases but at least to award the counsel fees at a reasonable hourly rate.

Without detailing the facts in the underlying antitrust case, it is sufficient for the purpose of this memorandum opinion to state that suit was originally brought on June 12, 1972 by plaintiff against certain trucking firms, viz: Cooper-Jarrett, Inc. his former employer, Matlack, Inc., National Freight Lines, Wilson Freight Forwarding Company (now Wilson Freight Lines, Inc.) (hereinafter Wilson) and Brauns Baking Company also known as Continental Baking Company for damages allegedly suffered by the plaintiff as the result of a black listing and boycotting conspiracy which he claimed

had been entered into against him by these trucking companies at the instance of Cooper-Jarrett. Plaintiff was formerly an over-the-road truck driver for Cooper-Jarrett and after some dissension with his employer was discharged and, according to plaintiff, told they would see to it that he would never work for another trucking company again. The evidence indicated that the action of the other trucking companies in refusing to hire him was instigated by Cooper-Jarrett.

The case was originally undertaken on February 16, 1972 by the Honorable Paul A. Simmons, Esquire, now judge of the Court of Common Pleas of Washington County, Pennsylvania who has testified at the evidentiary hearing in this case on the question of counsel fees. Judge Simmons became a judge of Washington County on June 1, 1973 and on that date terminated his participation in the case and turned it over to John W. McIlvaine, Esq. who has represented plaintiff since that time. It appears that Judge Simmons was very reluctant to undertake representation of the plaintiff in this case fearing that it was a case where a large amount of work would be done and the hope of recovery was small.

Mr. McIlvaine thereupon continued with the case which had been prepared by Judge Simmons and in which McIlvaine had participated. The case was reached for trial before this member of the court on January 9, 1974 with the following results:

(1) Brauns Baking Company a/k/a Continental Baking Company: dismissed on motion for directed verdict at the close of trial.

(2) National Freight Inc.: The jury found for this defendant and judgment was entered in its favor.

(3) Verdict for $53,600 upon which judgment was entered against defendants Cooper-Jarrett, Inc., Matlack, Inc. and Wilson Freight Co.

Motions for judgment NOV and new trial were filed by the three defendants against whom judgment had been entered and on August 20, 1974, the court denied the motions for judgment NOV but ordered a new trial to be granted as the result of prejudicial remarks made by plaintiff's counsel during his argument to the jury.

The case was again called for trial on October 10, 1974 and on that day after the jury was sworn settlement was arrived at between the plaintiff and Cooper-Jarrett and Matlack in which these two companies agreed to pay plaintiff a total of $60,000 in return for a joint tortfeasor release. See *Baughman v. Cooper-Jarrett, Inc.*, 391 F.Supp. 671. Plaintiff, however, reserved all of his rights against the remaining defendant Wilson which had refused to settle and the case went to trial against Wilson resulting in a verdict after seven days of trial in the amount of $25,000 which was trebled to the amount of $75,000 and thereafter reduced on motion of Wilson after allowing credit for the payments made by the co-defendants Cooper-Jarrett, Inc. and Matlack, Inc. to $25,200 which the district court determined was the proper share of Wilson.

Both parties appealed to the U.S. Court of Appeals for the Third Circuit which upon review of this rather complicated question as to the amount of credit to be allowed and other matters in the case determined that denial of Wilson's motion for judgment NOV should be affirmed but that the order reducing the judgment from $75,000 to $25,200 should be vacated and the cause remanded to the district court with directions to enter a judgment in the amount of $30,600 thus increasing plaintiff's recovery by the sum of $5400. The U.S. Supreme Court denied certiorari and this judgment therefore became the final judgment in the case. Plaintiff thus recovered by way of settlement $60,000 plus $30,600 against Wilson or a total of $90,600.

The petition for counsel fees represented that the plaintiff's attorneys Judge Simmons and Mr. McIlvaine had experience and expertise in complex multi-party litigation including antitrust cases and sets forth the steps in the trial and the work done including the briefs and arguments in the court of appeals, petition for rehearing in the court of appeals and opposition to the petition for

writ of certiorari to the U.S. Supreme Court. The petition sets forth that plaintiff's counsel rendered 1197 hours of service in this case over a period of five years and claims counsel fees for these services in the amount of $329,175 plus costs and expenses in the amount of $2807.54. The denial of certiorari occurred on October 4, 1976 and this petition was filed November 29, 1976. After postponement in order to give counsel proper time to prepare the case was argued before this member of the court on February 17, 1977 and additional briefs were received from the parties on February 28, 1977. The matter is now before the court for disposition.

In accordance with the instructions given in the *Lindy* cases and other cases in this circuit, we must in determining the amount of counsel fees consider the following items:

(1) The hours expended by counsel.

(2) The reasonable value of counsel's time.

(3) Contingent nature of success.

(4) Quality of the work performed.

We will now address ourselves to these problems noting, however, that under *Lindy II*, supra, we are to consider the items separately. It is not necessary to make a minute examination, however, of every facet of representation in arriving at our conclusions. We also note that under *Lindy I*, supra, expert opinion evidence is not required since the judge is presumed knowledgeable as to these matters. Nevertheless, being over six years away from the practice of law, the court admits he has lost some of the expertise which he used to have with respect to the economics of managing a law office and the charges which must be made for time in order to compensate for the heavy expenses including rent, salaries of secretaries and others, books and office supplies, depreciation on furniture and equipment, expenses of copying machines and copying materials and other items which go into the successful operation of a law office today. Particularly, the court did not feel comfortable in trying to determine what were the usual customary charges for billing at hourly rates in Washington County. We have, however, had the expert assistance of Judge Simmons who is thoroughly familiar with the background and early development of this case, who has reviewed the matter and who is knowledgeable as to charges in Washington County and also very knowledgeable in this field of law since Judge Simmons was attorney for the plaintiff in the protracted case of *Knuth v. Erie Crawford Dairy Cooperative Assn. et al.*, 395 F.2d 420 (3d Cir. 1968), on remand, 326 F.Supp. 48 (W.D.Pa.1971), aff'd in part, rev'd in part, 463 F.2d 470 (3d Cir. 1972), on remand, 58 F.R.D. 646 (W.D.Pa. 1973), aff'd, 487 F.2d 1394 (3d Cir. 1973). We will therefore consider the separate factors.

(1) Hours expended.

Under the principles laid down in *Lindy I*, supra, the first step is to ascertain the amount of time spent by the attorney. The second step is to determine the reasonable hourly rate to be allowed for such services. These two items combined furnish the court with what is known as "the lode star" following which further determinations must be made as to quality and contingency of services.

The evidence in this case shows that a total of 1197 hours were expended by Judge Simmons and Mr. McIlvaine who took the case over for him on May 27, 1973. The total hours expended beginning with Judge Simmons' first work on the case beginning February 16, 1972 when he finally determined to undertake representation through November 14, 1976, the date of preparation of the petition for counsel fees and costs amount to 1197 hours. See Exhibit C attached to petition for counsel fees. The time spent was verified at the time of the evidentiary hearing on counsel fees. While defendant claims that the hours spent are over stated, there is no basis in the record for such assertion. Petitioner offered to open his original books for inspection and verification but this offer was not acted upon and the court therefore determines that the figure of 1197 hours is correct.

It will be noted, however, that a portion of the hours spent were devoted to the first trial being items 108 to 121, a total of 137 hours. A new trial had to be granted following the first trial because of improper and prejudicial remarks of plaintiff's counsel. On the other hand, the evidence produced at the first trial was as noted by the court in its order granting retrial sufficient to allow recovery had it not been for the prejudicial remarks of counsel. The evidence adduced at the first trial was of importance in the second trial which was successfully conducted and indicated that there was liability upon the three defendants Cooper-Jarrett, Matlack and Wilson. The court therefore determines that one half of the time spent at the first trial should be excluded or a total of 68.5 hours.

The next inquiry is to determine whether the hours spent on this case contributed to the recovery against Wilson. While there was indication that at the early stages of the case Wilson was not considered as a party and was not joined until September 12, 1972, after the case had been instituted, nevertheless the work done in items 146 prior to Wilson being joined was important to the whole case. These hours were devoted to general preparation and investigation of the situation during which Wilson surfaced as a party. The court sees no reason why these hours should be excluded.

The court does, however, consider that all of the hours and all of the time spent up until the commencement of the second trial when the other defendants settled should be divided among the three parties determined to be members of this conspiracy allocating one third to each since it is impossible to separate how much work was devoted to fastening liability upon Wilson versus the time spent in fastening liability upon Cooper-Jarrett and Matlack. In view of the fact that National Freight and Brauns Baking were eliminated at the first trial and determined not to be part of the conspiracy, the court sees no purpose in allocating any time spent to securing recovery against them. We therefore will allocate the hours spent three ways to October 10, 1974 the beginning of the second trial when the other two defendants settled. These hours amount to 858 of which two thirds should be excluded as applying to the defendants other than Wilson.

Plaintiff strenuously argues that there should be no allocation of the time up to the date of dismissal of the other two defendants. However, both this court has had to and the court of appeals have had to make difficult calculations in apportioning the recoveries in this case as the result of the settlement entered into on October 9, 1974 so as not to impose unnecessary liability upon Wilson for the misconduct of Cooper-Jarrett and Matlack and prevent double recovery by plaintiff. It therefore appears to the court that the same reasoning should be followed in allocating hours spent prior to October 10, 1974 in accordance with the decision of this court in *Baughman v. Cooper-Jarrett, Inc.*, 391 F.Supp. 671 and the subsequent decision of the circuit, 530 F.2d 529.

In arriving at the total amount of hours to be included in calculations, we therefore add the 858 hours expended prior to October 10, 1974 to 68.5 hours the amount of time excluded from the first abortive trial. The necessity of a retrial was caused solely by the conduct of plaintiff's counsel in his address to the jury as the result of which the court has determined that at least half the time spent in the first trial was wasted. The total hours expended to the beginning of the second trial therefore amount to 858 less the 68.5 excluded or a net of 789.5 to be allocated three ways among Wilson, Cooper-Jarrett and Matlack. Wilson's share to be included is therefore 263.17 hours.

The number of hours which are entirely chargeable to Wilson from October 10, 1974 to November 14, 1976, amount to 394 hours resulting in a total time figure chargeable to Wilson of 657.17 hours.

The court has considered the matter of payment of $20,000 paid by plaintiff Baughman paid by his attorney in October 1974 on receipt of the $60,000 settlement from Cooper-Jarrett and Matlack and has deter-

mined that this should be excluded entirely from the calculations. The evidence shows that there was no contingent fee arrangement between Baughman and his attorneys. We are not at the present time charging anything against Cooper-Jarrett and Matlack. This $20,000 was paid by plaintiff on account of this settlement. Since we have excluded two-thirds of the time prior to October 10, 1974, as chargeable to Cooper-Jarrett and Matlack, Wilson cannot complain about the exclusion of the $20,000 from these calculations since the time for which it was to compensate has already been excluded.

■ The court also sees no reason for excluding the seven hours included in the calculation which were hours devoted to preparing a petition for counsel fees. It is true that *Lindy II*, 450 F.2d 102 at page 111 held that in an equitable fund case such services do not benefit the fund, they do not create increase, protect or preserve it, and therefore there is no basis for inclusion of such fees.

The difficulty is that this case now before us is not an equitable fund case. It is a question of what counsel fees should be paid by a losing single party after judgment and the court therefore sees no reason for excluding this small amount of hours for which recovery is sought. The calculation therefore runs as follows:

| | |
|---|---|
| Total hours allowed to beginning of second trial and settlement with Matlack and Cooper Jarrett, items 1–163 in Exhibit C | 858 |
| One half of hours for first trial allowed, items 108–121 a total of 137 hours – total amount allowed | −68.5 |
| Net | 789.5. |
| One third allocable to Wilson | 263.17 |
| Hours expended October 10 1974–November 14, 1976 entirely chargeable to Wilson | 394 |
| Total time chargeable to Wilson | 657.17 |

(2) Rate per hour.

■ Judge Simmons stated in his testimony that $110 per hour was a proper charge for an attorney in Washington County working on an antitrust case. He stated only three or four firms in Western Pennsylvania were competent to undertake representation of a plaintiff in such an antitrust case and that the charge would be $110 an hour for such work. The difficulty that the court has in adopting this figure is that this apparently includes the quality factor which will be discussed in the next subdivision of this memorandum opinion. The quality factor considers the experience and competency of counsel in the particular area being discussed and to inject the quality factor at this point in arriving at the lode star figure and then consider it again in connection with the quality factor itself leads to a double recovery and this court refuses to follow such a calculation. There is no evidence that Simmons and McIlvaine confined themselves exclusively to this field.

Judge Simmons testified further that the average hourly rate charged by attorneys in Washington County during the period of 1970–72 was $40.45 per hour and in the period 1972–76 the hourly rates were $55.60 per hour.

This is understandable because of the inflationary increase in costs of operating a law office and the need of counsel for greater income for himself and family in view of rising prices. The average of these two periods covering the total time of 1972–76 the court finds to be $50 per hour. This corresponds with the court's own observation and knowledge as to hourly charges in other counties in the Western District of Pennsylvania, outside metropolitan Allegheny County, and we therefore determine that the proper hourly rate to be employed in arriving at the lode star is $50 per hour. Multiplying 657.17 hours by $50 gives a figure of $32,858.50 for the lode star. We now turn to the other two factors.

(3) The contingency factor.

■ Judge Simmons testified that the chances of success in this action as originally brought to him in 1972 were remote, that he was reluctant to take the case for fear he would spend a large amount of time and accomplish nothing but he was finally im-

portuned to assume responsibility for it. We consider Judge Simmons' testimony to be correct. As a matter of fact prior to the beginning of the first trial in this case, considering what the court already knew about the matter at pretrial arguments and conferences, the court considered the chance of success to be slim.

Under *Lindy II* we must consider the contingent nature of success in determining a factor to be attributed to the determination of fees. In that case doubling the fee for the contingent nature was held to be proper. We have previously determined the lode star.

Under *Lindy II* supra the lode star being determined the court should inquire separately into the contingency factor and the quality factor. It should be noted that there was no contingent fee agreement with the plaintiff and in fact no agreement at all as to fees according to the testimony. However, plaintiff did pay $20,000 to Mr. McIlvaine upon receipt of the settlement at the beginning of the second trial in October 1974. Also, it should be noted that this was not a case handed to plaintiff's counsel on a silver platter as the result of prior litigation or investigation, civil or criminal in connection with litigation brought by the government against these defendants which is quite often the case in other antitrust suits. Counsel in this case ran the risk of putting in 1197 hours of their own time and in the end getting nothing for it. Initially, this case could be described as having been taken on a shoestring, with little probability of success, and yet it turned out to be a winner having gone all the way to denial of certiorari by the U.S. Supreme Court.

As noted below, it is in the public interest considering the private attorney general theory applied to treble damage actions under the antitrust laws that counsel be encouraged in an award of fees to undertake contingent litigation of this nature so that the public can be protected and the public's interest in enforcement of the antitrust laws be served.

Under these circumstances, the court agrees with plaintiff's counsel that a multi-

plier of 2 for the contingency factor should be applied to the lode star finding.

(4) Quality of work.

The court agrees that it comes with poor grace from Wilson Freight Forwarding to claim that the quality of work in this case was not good in view of the success obtained by plaintiff's counsel. It is true that the quality is marred by the improper remarks made in the closing address to the jury in the first trial but the court determines that plaintiff's counsel has been penalized enough for this in assessment of counsel fees by allowing only one half of the hours spent on the first trial.

The court agrees with Judge Simmons' testimony that this case was important and reached an important result because it showed that an ordinary truck driver could recover under the antitrust laws for the deplorable practices of blacklisting and boycotting imposed upon him by large trucking companies. These immoral and illegal practices are reminiscent of tactics adopted by employers in this country and elsewhere in the late 1800's and the early years of this century. The results achieved were excellent. It is noted that the circuit has indicated that we should be cautioned about permitting quality of the work to inhere in the lode star award. In this case we have not included the experience and the value of knowledgeable counsel in the hourly rate and have determined that Judge Simmons' method of calculation of $110 an hour and then applying a factor of 2½ to this results in duplication. Instead, we have applied a regular hourly rate to arrive at the lode star and will now multiply this by a factor to determine the amount to be attributed to quality work. By excluding a portion of the hours expended on the first trial, we have penalized the use of methods which delayed or obstructed the final conclusion of the proceeding and consider that this is sufficient penalty.

This was a complicated antitrust case involving somewhat novel substantive issues and the results were outstanding. We will therefore allow an additional multiplier of

1.5 for quality of work making an additional allowance of 150% for this item. Adding this to the factor of 2 for a contingency gives us a multiplier of 3.5 or a total hourly rate of $175. Applying the multiplier of 3.5 to the lode star amount of $32,858.50 as previously determined, we arrive at a total fee of $115,004.75.

■ The court has been concerned that the fee as allowed in accordance with the guidelines and the court's appraisal of what is a reasonable fee under these circumstances has led in this case to a fee larger than the amount of recovery, viz: $90,600. This however is no objection. This fee is assessed under section 4 of the Clayton Act 15 U.S.C. 15 which reads:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Considering the fact that some antitrust suits lead to abnormally small amounts of recovery and yet in the public interest should be undertaken by counsel, it is evident that in many cases the fee allowed as reasonable will amount to more than the amount of recovery. It is also obvious that to allow a purely contingent fee would result in few counsel being interested in undertaking representation where the chance of recovery is poor and the amount to be recovered is so small even with a victory as not to justify the work. In *Osborn v. Sinclair Refining Co.*, 207 F.Supp. 856 (D.C.Md. 1962) the amount of recovery was $975 and an attorney's fee of $14,000 was awarded. This case was cited with approval in *Perkins v. Standard Oil Co.*, 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970). The Second Circuit has pointed out that a percentage of the recovery is not satisfactory in cases involving a small recovery because it gives undue weight to the size of the

recovery and leads to too large a percentage where the recovery is large. See *TWA Inc. v. Hughes*, 312 F.Supp. 478 (S.D.N.Y. 1970) aff'd 449 F.2d 51 (2d Cir. 1971) reversed on other grounds 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). An amount larger than the recovery was allowed in *Lockton v. Day Glo Color Corp.*, 378 F.Supp. 23 (D.C.Ill.1974). Finally in *Morning Pioneer Inc. v. Bismarck Tribune Co.*, 493 F.2d 383 (8th Cir. 1974) it was held that where the amount of recovery is small, attorney's fees in excess of the award may be granted.

(5) Cost and expenses.

Exhibit D attached to the petition claims total costs and expenses in the amount of $2,807.54. These appear to be in order except that the expenses incurred down to preparation for the second trial should be divided three ways among Cooper-Jarrett, Matlack and Wilson. These expenses are set forth on the first page of Exhibit D and total $733.18. One third thereof would amount to $244.39. The expenses shown on the second page of Exhibit D are in the opinion of the court entirely proper and owing by defendant Wilson Freight Lines, Inc. These amount to $2,174.36, which added to the $244.39, ⅓ of the amount shown on page 1 of Exhibit D, make a total award of expenses and costs of $2,418.75.

The foregoing contains findings of fact and conclusions of law in conformity with Rule 54(a).

An appropriate order will be entered.

## JUDGMENT ORDER FIXING COUNSEL FEES, EXPENSES AND COSTS

AND NOW, to wit, April 6, 1977, for reasons set forth in the accompanying memorandum opinion,

IT IS ORDERED that judgment be entered in favor of the plaintiff and against the defendant Wilson Freight Lines, Inc., in the amount of $115,004.75 which are hereby determined to be reasonable counsel fees to be recovered by the plaintiff in this action.

IT IS FURTHER ORDERED that judgment be entered in favor of the plaintiff and against the defendant Wilson Freight Lines, Inc., in the amount of $2,418.75 which is hereby determined to be reasonable expenses and costs to plaintiff in this case.