Richard B. AUMILLER, Plaintiff,

v.

The UNIVERSITY OF DELAWARE
et al., Defendants.

Civ. A. No. 76–84.

United States District Court,
D. Delaware.

March 29, 1978.
Opinion on Motion for Reargument
June 21, 1978.

Sheldon N. Sandler, Thomas S. Neuberger, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

John P. Sinclair and James F. Burnett, of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, Pub.L. No. 94–559 [hereinafter "1976 Act"], plaintiff has moved for attorneys' fees and expenses incurred in the successful litigation of this action. In an earlier opinion, this court held that defendants had infringed plaintiff Aumiller's first amendment rights in failing to renew his teaching contract "because of his statements on the subject of homosexuality which appeared in three newspaper articles." *Aumiller v. University of Delaware*, 434 F.Supp. 1273, 1312 (1977). Remedial relief was ordered in the form of $12,454 in back pay, $10,000 in compensatory and $5,000 in punitive damages. Pending reargument, the parties settled with the result that Aumiller received the decreed back pay and damages. Plaintiff agreed to relinquish his previously denied claim for reinstatement and in exchange the University agreed not to appeal. Plaintiff then

moved for an award of attorneys fees under the 1976 Act.[1]

All parties agree that the motion must be decided utilizing the formulae articulated in *Lindy Bros. Builders, Inc. of Phila. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and 540 F.2d 102 (3d Cir. 1976) (*Lindy II*). The *Lindy* formulation which arose in the context of apportioning the common fund of a class has been applied to awards permitted by statute, *Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir. 1977), and to those situations which require that payment come from the defendant rather than from a fund. *Pitchford v. Pepi,* 531 F.2d 92 (3d Cir. 1976). Affidavits have been filed and a hearing held as contemplated by *Lindy I, supra,* 487 F.2d at 169, with the result that the case is now ripe for decision.

■ *Lindy I, supra,* instructs that the number of hours expended by counsel be multiplied by the reasonable value of counsel's time, usually calculated at counsel's normal hourly billing rates. The resulting figure is known as the lodestar. *Id.* 487

F.2d at 168. In addition to consideration of the lodestar, the court may consider at least two additional factors, namely the "contingent nature of success" and the quality of legal work. The court is then permitted to adjust the lodestar in accordance with its findings as to these factors. In addition, remuneration for out-of-pocket costs is permissible.

In the case at bar, defendants argue that the lodestar value of $33,224 be reduced in accordance with plaintiff's ability to pay some legal fees as a result of his receiving a $5,000 "windfall" in punitive damages. Counsel to the plaintiff seek double the lodestar to reflect the contingent and qualitative aspects of the case.[2] In addition, plaintiff's attorneys request $2,111.95 in costs.

### Hours Expended

The undisputed evidence is that 399.3 hours were spent by counsel and related legal personnel in litigating this case and that an additional 64.6 hours were invested in litigating the fee petition.[3] Thus the

---

1. The 1976 Act provides in pertinent part:
"In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988.

2. The actual figure of $60,000 was requested in an affidavit at a time when the lodestar was computed to be $30,195. Doc. 51, at 4. Since that time counsel have invested additional time and have requested that their total time be doubled.

3. Comporting with the requirement of *Lindy, supra,* 487 F.2d at 167, petitioners have supplied an affidavit which sets forth the number of hours spent by different counsel in such matters as discovery, research and briefing, conferences, trial, settlement negotiations, etc. all of which are accepted as correct as follows:

| | TOTAL | SNS | TSN | JFG | JSG | PD |
|---|---|---|---|---|---|---|
| Conferences concerning the case, in person and by tel.; fact investigations, settlement discussions, draft correspondence. | 40.7 | 31.7 | 4.3 | 1.0 | 1.2 | 2.5 |
| Pretrial discovery preparation, depositions, inspection of documents, abstract depositions. | 46.5 | 44.0 | | | 2.5 | |
| Preparation of pleadings and motions. | 21.3 | 21.0 | | | .3 | |
| Legal research and briefing. | 159.5 | 159.5 | | | | |
| Trial and argument. | 76.1 | 73.5 | .3 | | 2.3 | |

total number of hours for which remuneration is sought is 463.9 hours. Although defendants, in passing, question the propriety of including paralegal time, no serious dispute regarding this item has surfaced. The legislative history of the 1976 Act addressing the cost of paralegal time and the desirability of using paralegals, where possible, instead of more expensive counsel support the inclusion of such personnel in totalling the hours expended.[4]

Defendants' other contention is directed to inclusion of the 64.6 hours spent primarily by associate counsel litigating the issue of counsel fees. Defendants correctly point out that *Lindy II, supra*, 540 F.2d 102, limited recovery to those hours which contributed directly to plaintiff's recovery and consequently, the court disallowed an award for time spent in pursuing attorneys' fees. However, defendants have overlooked the reasons underlying that decision. Expressly addressing the situation where the attorneys' fee would come out of a common fund which would otherwise go to the successful class litigants, the court noted that "in the circumstances of this case . . . the competing interests of claimants to a common fund" defeat the award of attorneys' fees for time spent which redounds only to

the benefit of the attorney. *Id.* at 111. The adverse interests between the attorney and his client patently evident in the common fund situation are not present here. Also absent are those inactive members of a class whose rights the court must seek to protect in a class action. These major distinctions between *Lindy* and the instant case counsel that *Lindy* is not dispositive of the question before the court, namely whether for purposes of awarding attorneys' fees, a distinction must be drawn between time spent on the merits and time devoted to defending the application.

The Third Circuit has addressed this question in dictum in *United States v. Larchwood Gardens, Inc.*, 420 F.2d 531 (3d Cir. 1970). In deciding that appellant receivers rather than the represented corporation ought to bear the costs of appeal, the court recited that "the general rule requiring each party to pay his own expenses in defense of his personal interest should control" and stated "[i]t is our understanding that services necessarily involved in preparing such [fee] applications to the district court and defending them there are not compensable." *Id.* at 534. The issue then is whether, if this rule has current validity,[5] it applies with equal force to cases decided under civil rights statutes.

| | TOTAL | SNS | TSN | JFG | JSG | PD |
|---|---|---|---|---|---|---|
| Court Appearances: Pretrial Conferences with the Court, oral argument. | 35.1 | 35.0 | | | | |
| Motion for reargument. | 13.1 | 12.2 | .9 | | | |
| Settlement negotiations. | 7.1 | 6.7 | .4 | | | |
| Preparation of fee application: briefing, deposition by defendants, legal research. | 64.6 | 22.5 | 38.8 | 2.5 | | .8 |
| TOTALS | 463.9 | 406.1 | 44.7 | 3.5 | 6.3 | 3.3 |

SNS refers to Sheldon N. Sandler who bills at $75 per hour ($75); TSN refers to Thomas Stephen Neuberger ($50); JFG refers to John F. Gangi ($25); JSG refers to John S. Grady ($60); PD refers to Pamela Deeds ($20).

---

4. 122 Cong.Rec. H. 12160 (Oct. 1, 1976).

5. Other courts have allowed compensation for time spent on appellate proceedings. *Perkins v. Standard Oil Co.*, 399 U.S. 222, 223, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970) (per curiam); *Ward v. Kelly*, 515 F.2d 908, 912 (5th Cir. 1975).

Apart from the limitations on attorneys' fees from an equitable fund, defendants have supplied no case from the Third Circuit Court of Appeals or any other circuit and none has come to the attention of the Court where an actual request for reimbursement of time spent in pursuit of counsel fees has been disallowed in civil rights cases.[6] Instead, defendants rely on language in *Pitchford, supra,* 531 F.2d at 111, stating that "defendant may be obliged to pay only what the Court determines to be a reasonable fee for the legal services provided to plaintiff in the case at issue." By this statement, the Third Circuit rejected an award for costs incurred as a result of a private arrangement between plaintiff and plaintiff's counsel but made no reference to the propriety of including time spent in the construction and defense of a fee petition. Indeed, if *Pitchford* provided authority for excluding time spent on counsel fees, surely the court in *Lindy II* would have availed itself of that guidance. Instead, *Lindy II* was decided without reference to *Pitchford.* A review of the foregoing precedents indicates that the precise question raised by the instant civil rights case is unresolved in the Third Circuit.[7]

The argument in favor of permitting recovery for time spent in pursuit of fees is forcefully made by plaintiff who asserts that unless defendants pay the costs of litigating the issue of counsel fees, defendants will purposely delay in order to dilute the ultimate recovery and finally discourage plaintiff's counsel from pursuing civil rights claims. Plaintiff's counsel maintains that, if he must finance this stage of the proceedings, the spirit of the 1976 Act, designed to encourage action by "private attorneys general" and deter socially harmful conduct, is undermined. This argument has fallen on fertile ground in a number of circuits. The First, Fifth and Ninth Circuits have expressly held that counsel for the prevailing party is entitled to costs incurred in the pursuit of attorneys' fees. *Souza v. Southworth,* 564 F.2d 609, 614 (1st Cir. 1977); *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (W.D.Cal.1974), aff'd, 550 F.2d 464 (9th Cir. 1977); *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 539 (5th Cir. 1970).

Because exceptions to the American Rule that each party bear its own costs are legislative, not judicial, creations, a review of the legislative history of the 1976 Act is essential. Despite the reaffirmation in the Senate Report that "Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws,"[8] the desired expression of legislative intent is less than clear-cut. The Senate Report instructs that "in computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'"[9] Because a fee-paying client would ordinarily not receive a bill for time spent in computing a fee, this statement does not establish that time so spent is reimbursable. However, the Senate also stated that the appropriate standards, . . .

---

**6.** Many attorneys' fee cases, however, are decided without reference to this point. *See, e. g., Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), and cases cited therein. Quite possibly, petitioners in these cases did not seek compensation for time spent on counsel fees. *See, e. g., Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527, 530–31 (9th Cir. 1975). *But see Cohen v. Maloney,* 428 F.Supp. 1278, 1285 (D.Del.1977), where the court disallowed an award under the Voting Rights Act of 1965.

**7.** At least one district court in this circuit has permitted an award for services rendered in connection with securing counsel fees. *Baugh-*

*man v. Wilson Freight Forwarding Co.,* 79 F.R.D. 520 (W.D.Pa.1977). However, other district courts have disallowed such an award. *Cohen v. Maloney, supra; Commonwealth v. O'Neill,* 431 F.Supp. 700 (E.D.Pa.1977). The latter case appears to involve the award of damages to a class and consequently was decided on authority of *Lindy II.*

**8.** S.Rep. No. 94–1011, 94th Cong., 2d Sess. 3 reprinted in [1976] U.S. Code Cong. and Admin. News, pp. 5910, 5911.

**9.** *Id.* 6, [1976] U.S. Code Cong. and Admin. News, p. 5913.

"are correctly applied in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D. Cal.1974) . . . ."[10] In *Stanford*, the court permitted an allowance for services rendered in connection with the fee petition. Thus, the *Stanford* court expressly rejected defendant's contention that, in calculating fees, a distinction be drawn between time spent on the merits and on the issue of fees, stating "[t]his contention does not square with federal court decisions." *Id.* at 683.

By its approving reference to *Stanford* Congress has indicated at least no desire to limit an award of counsel fees to the time spent on the merits of the case. Instead, relying on statutory provisions like the 1976 Act for the private enforcement of important federal rights and desirous of attracting competent counsel to that task, it may well be that Congress has concluded that such a restriction is not in the national interest. In that regard, the Supreme Court has explained that attorney fees awarded under Title II, for example, are to be liberally construed in furtherance of the congressional purpose "to encourage individuals injured by racial discrimination to seek judicial relief . . . ." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), cited with approval in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *See also Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir. 1977). Given the broad congressional policy in favor of enforcing civil liberties through private litigation and the intent of Congress to award fees "as prevail in other types of equally complex Federal litigation, such as antitrust cases",[11] this Court concludes that there is nothing to suggest that counsel's time spent in pursuit of his fee was intended by Congress as anything but a "cost" of litigation.

However, even if the conclusion were not mandated by the Act and an award of fees for this purpose were within the discretion of the Court, the decision in this case would remain unchanged. A significant portion of plaintiff's time in litigating the issue of fees was devoted to meeting defendant's challenge to plaintiff's counsel's hourly rate. However, no evidence was adduced to suggest that counsel's fees were other than reasonable either by comparison to other advocates of like training or experience or by reference to the type of service rendered. Depositions and discovery matters conducted at the request of defendant centered around comparison of counsel's hourly rate with those charged other of his clients.

■ At times when these matters required judicial intervention, the Court was made aware that the issue of attorneys' fees was hotly contested and that defendants were prepared to mount a substantial battle in order to attack the award. Thus, defendants' argument that unless each party bears its own costs, counsel for the prevailing party will unjustifiably seek to increase his fee, confident such steps will be charged against the opponent, is well taken, but inapplicable to the facts of the instant case. Resolution of that situation, should it ever occur, will have to wait for another day. At that time, a rule of reason safeguarding against windfall payments combined with pecuniary penalization may well provide an answer. Meanwhile, under the facts of this case the 64.6 hours, valued at $3706,[12] devoted to litigating the issue of counsel fees is considered a reimbursable cost within the meaning of the Act.

Attention is now turned to the immediate issue. That issue is what amount the losing party must bear in counsel fees and the answer quite simply ought to be no more than a reasonable amount. Given the fac-

10. *Id.*

11. *Id.*

12. Of the 64.6 hours, 22.5 were spent by lead counsel at $75 per hour; 38.8 hours were spent by an associate whose services are valued at $50 per hour; 2.5 by a law graduate at $25 and .8 hour by a paralegal at $20.

tual and legal complexities presented and the ammunition mounted by a powerful adversary, the number of hours spent in this litigation on behalf of plaintiff is surprisingly low. Although plaintiff did not prevail on his claim for reinstatement and although he abandoned other claims as a tactical strategem, none can be considered frivolous or unworthy of the time spent in pursuit of them. Accordingly, the court concludes that the 399.3 hours in litigation and the 64.6 hours consumed in securing attorneys' fees are reasonable under the circumstances of this case so that the total of 463.9 hours will be considered the hours expended.

### Rate Per Hour

 Lead counsel submitted an affidavit stating that his hourly rate is $75 per hour and that he contributed 406.1 hours to the case. He was aided by an associate who spent 44.7 hours billed at $50 and three other people for short periods of time.[13] Defendants state that they "have not attempted to present evidence to show that $75 is an unreasonable hourly rate for an attorney with a level of skill and experience comparable to that of Mr. Sandler."[14] Nonetheless, defendants have taken considerable pains to establish that Mr. Sandler's rate for the twelve month period ending August 30, 1977 was less than $75 for labor and discrimination cases, the area of his specialization, as a result of a retainer arrangement.

For several reasons, defendants' reliance on plaintiff's counsel's retainer is misplaced. First, apart from the retainer, counsel has a labor practice for which he bills $75 an hour.[15] Second, the nature of a retainer

necessarily results in fluctuation if transformed into an hourly rate so that one year the average rate per hour may well be lower than $75 an hour and another year it may be significantly higher. Thus the comparison with rates resulting from a retainer is faulty. Third, when counsel is retained by a client, he generally becomes familiar with the client and his needs and consequently is able to respond to problems in a shorter time and with less difficulty than would otherwise be the case. This convenience afforded by a retainer as well as the good will and stability inherent in such a relationship indicate that reference to amounts paid under a retainer does not advance the relevant inquiry here required. Finally with respect to Mr. Sandler's hourly rate, he was awarded fees in the amount of $60 per hour in 1975.[16] Given Mr. Sandler's increased expertise and experience as well as general increases in wages, the $75 billing rate is neither unexpected nor unreasonable. Similarly, the hourly rates submitted as that of J. Grady ($60), T. Neuberger ($50), J. Gangi ($25) and P. Deeds ($20) are all found to be a reasonable value for their respective services.

### Contingency Factor

 Defendants' primary argument is that the $75 rate, which is higher than the hourly rate received last year under a retainer, already takes into account the contingency factor. As the foregoing indicates, there are substantial differences between the circumstances in which the attorney bills his client on an hourly basis or bills him only upon the contingency that there is a successful disposition of the case and one in which the attorney works under a previ-

---

**13.** An associate for 6.3 hours at $60 per hour, a law graduate for 3.5 hours at $25 per hour and a paralegal for 3.3 hours at $20 per hour. For all counsel the nature of the work performed and the responsibility assumed was set out.

**14.** Doc. No. 63 at 14.

**15.** The extent of this practice is in dispute. The record reflects that of 60% devoted to

labor matters, 5% is billed at $75. Doc. No. 58 at 17. Asserting that the transcript is in error, plaintiff's counsel submits that of his labor practice, 45% is billed at his hourly rate. Doc. No. 65 at 2.

**16.** *Morris v. Board of Education of the Laurel School District*, C.A. 4684 (D.Del. Dec. 29, 1975).

ously determined retainer. Consequently, because Mr. Sandler's hourly rate is not perceived as including a contingency factor, the contingent aspects of the case will be analyzed separately.

*Lindy II, supra,* 540 F.2d 102, instructs that consideration of contingency for purposes of awarding attorney's fees requires more than an inquiry into whether counsel had a reasonable prospect of obtaining payment for his services. Specifically, the court must analyze plaintiff's burden taking into account the complexity of the case and the difficulty of proving defendant's liability and resultant damages. *Id.* at 117. Relevant to that inquiry is whether defendants' liability has been determined by a government agency or inferred by related cases on the same issues. The court must also focus upon the amount of time and expenses incurred without promise of remuneration and the delay in receipt of payment. *Id.*

In arguing against an increase in the lodestar due to the contingent nature of success, the defendants find themselves in the curious position of maintaining that liability against them was so clear-cut from the outset that plaintiff's case was easy to establish. Without commenting on the disingenuousness of that position, the court cannot agree. There had been no pre-determination of liability nor had the precise facts been conclusively litigated.

No contention has been made that the case could have been reduced to simpler proportion.[17] As it was, the case was legally and factually complex with elements of pure speech and symbolic speech interwoven in a pattern that conjured up questions of plaintiff's fitness to teach and his entitlement to a non-tenured position. For example, introduced into what defendants now contend was a simple first amendment case were the details of plaintiff's living arrangements, his use of university facilities, the necessity for an affirmative action search, official immunity and development of standards for the assessment of punitive damages in civil rights actions. *See Cochetti v. Desmond,* 572 F.2d 102 (3d Cir. 1978). In addition, plaintiff had a number of claims which might have been submitted to arbitration but which he sacrificed when he decided to pursue his first amendment claim in federal district court. In weighing these risks, counsel had to consider that although plaintiff's reputation and professional career were clearly in the balance, the amount of provable damages was not great.

In representing plaintiff, plaintiff's counsel undertook considerable additional risk. Aumiller was ill-prepared to finance the costs of litigation; likewise the legal fund set up in his behalf was inadequate to cover anything more than the out-of-pocket expenses incurred in the case such as photocopying. An assessment of the maximum actual damage sought to be obtained indicated that a contingency fee arrangement was not a viable alternative. Moreover, at the time suit was commenced, there was no statutory provision for the award of attorney's fees in civil rights cases. Finally, the controversial and unpopular aspects of the case had the potential for an adverse economic impact on counsel's practice. Irrespective of these financial risks, counsel undertook the representation and ultimately invested several hundred hours with no promise of remuneration. In addition to the significant risk undertaken at the outset, counsel also incurred delay in receipt of payment which has created cash flow problems for his small firm.

■ Defendants argue that risk of nonpayment was assumed by plaintiff's counsel and must be disregarded. Thus defendants assert an increase in the lodestar may be awarded only if there is a "substantial likelihood of failure at the outset" quoting

---

**17.** The Court notes plaintiff gave up several alternative and additional modes of recovery prior to trial.

*Pitchford v. Pepi, Inc., supra,* 531 F.2d at 110. *Pitchford,* however, does not set forth an exclusive basis on which to increase the lodestar but rather relying on *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168 (3d Cir. 1975) (*Merola II*), reaffirms the principles of *Lindy* requiring consideration of both the risk of failure as well as the risk of non-payment. Consequently the court perceives no deviation from the standard set out in *Lindy.* Defendants also place heavy reliance on *Morris v. Board of Education of the Laurel School District,* No. 4684 (D.Del. Dec. 29, 1975), a case, also successfully litigated by Mr. Sandler, in which no increase in the lodestar was awarded. Apart from the fact that *Morris* was generally of similar nature to the case at bar and required about as much time, it lacks all resemblance to the contingent aspects of the instant case. In *Morris,* Mr. Sandler did not seek an increase based on contingency, quite possibly because there was no risk of non-payment. His client at the time was prepared to pay the sum of $45 per hour regardless of the outcome. Therefore, if reference to *Morris* adds anything of value, it must be to highlight the financial risks of this case.

Upon an analysis of the foregoing facts and consideration of both the risk of failure and of non-payment, the court concludes that an upward adjustment in the lodestar is justified. The proper amount of increase is necessarily difficult to ascertain with precision. One commentator has supplied the following scheme: That the court should consider the case as though at the outset and if at that time success was virtually assured, no increase in the lodestar should be given; if success were more likely than not at the start, an increase of 50% be awarded; if the chance of success were about even, an increase of 100% be considered and finally if success were unlikely, an award of 200% be considered appropriate. *Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?,* 126 U.Pa.L. Rev. 281, 326 (1977).

Although one can question the percentage increases, the scheme provides some basis for analysis. The chances for success in the instant case were probably better than even despite the relative positions of the parties. The leading state university with apparent unlimited resources for defense of this litigation was pitted against a sole young impecunious college instructor. Adding the substantial risk of non-payment to the risk of litigation, I conclude a 50% increase for contingency is appropriate, but hasten to point out that each case must be judged on its own facts. In the instant matter, in applying only a 50% contingency factor, the awesome David and Goliath aspect of this litigation has not been taken into account.

### Quality

■ *Lindy I, supra,* instructs that an unusual degree of skill may be rewarded upon an evaluation of the quality of the work observed and the complexity and novelty of the issues involved. The benefit obtained by the client is often indicative of the quality of the work but that benefit need not be measured in pecuniary terms. *Merola II, supra,* 515 F.2d at 172. If, as here, the full benefits to plaintiff are not easy to quantify, the court may nonetheless "recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested." *Id.* The court concludes this is such a case.

The substantial benefit to Aumiller is not fully measured in the back pay and damages awarded. The professional cloud under which he left the university is lifted and his reputation cleared. Academic freedom and freedom of expression are no longer empty words to him. Because of the express benefits to Aumiller, it is unnecessary to decide whether the court should also take cognizance of the public benefit claimed by people other than plaintiff. It may well be that in providing attorney's fees in civil

rights cases, the 1976 Act itself was intended to compensate for the public benefit without the need to increase the fees awarded under the Act. Suffice it to say that affidavits filed by educators, homosexuals and civil liberties groups support the finding that the benefit obtained here was other than purely monetary.

In addition to counsel's thorough preparation, exemplary conduct of the trial and unusually thorough post-trial briefing, all of which contributed to what must be characterized as a highly superior representation, the court was particularly impressed with the expediency with which the case was handled. Whether counsel's efficient use of time is directly attributable to the information retrieval system which counsel has devised or to other resources, the result is commendable. Plaintiff's counsel has estimated that without his ready resources, 600 hours may have been required. The Court declines to engage in pure speculation but, as stated earlier, the number of hours spent is surprisingly low. Effect may be given to the excellent result secured in minimal time by increasing the lodestar for quality and efficiency by an additional 50%.

Although the qualitative and contingent aspects of the case together justify an upward adjustment of 100%, it is not appropriate to likewise adjust the amount represented by the number of hours spent in preparing the fee petition. The time so spent redounds only to the benefit of the attorneys and not their client, and furthermore does not meet the criteria for contingency within the meaning of *Lindy*. Consequently, the 64.6 hours, invested in litigating the fee petition, valued at $3706.00 shall be awarded as straight time. In contrast, the 399.3 hours spent on the merits of the case valued at $29,518[18] will be doubled.

Thus the award is $29,518 × 2 = $59,136 plus $3706 or a total of $62,842.

## Costs

The out-of-pocket costs totalling $2,111.95 were paid by plaintiff's legal fund which, upon recovery, plaintiff intends to reimburse. Under these circumstances, defendants will be ordered to pay these costs. However, if plaintiff for any reason is unable to ascertain the identity of proper parties for reimbursement, these funds shall be returned to defendants.

Submit order of notice within ten days.

## OPINION ON MOTION FOR REARGUMENT

MURRAY M. SCHWARTZ, District Judge.

Following the issuance of an opinion on March 29, 1978 awarding attorneys' fees to plaintiff's counsel in the amount of twice the lodestar[1] and assessing the costs of litigating the fee petition against the defendants, defendants filed a motion for reargument. Enumerating thirteen grounds for reconsideration, defendants essentially attack the 50% increase in the lodestar attributable to contingency factors[2] and the award granted for time spent in connection with the fee application. In addition, a number of miscellaneous issues are raised. Having considered each of defendants' grounds for reargument, it is concluded that modification of the Court's earlier opinion is not warranted. Consequently, the motion for reargument will be denied.

Defendants contend with respect to the major points raised, namely the increase in the lodestar and the award made in connec-

18. This amount is the difference between $33,-224 calculated from the chart, *supra* at 4, to be the value of total time expended and $3706, the value of time spent on the fee petition.

1. The lodestar is calculated by multiplying the number of hours invested by counsel by the reasonable value of counsel's time. *Lindy*

*Bros. Builders Inc. of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973).

2. Doc. 69. Defendants have submitted no objections to the 50% increase in the lodestar attributable to the quality of counsel's work.

tion with the fee petition, that any award greater than the lodestar, which by definition is a reasonable amount, must be considered a "premium" or a "windfall." Then, because the defendants view the award of fees incurred in connection with the fee application as a second windfall, defendants contend that "one 'windfall' is piled upon another" in a manner "contrary to the intent of the Civil Rights Attorneys' Fee Awards Act of 1976, which was not intended to 'produce windfalls to attorneys.'"

This argument, more conclusory than compelling, is rejected. *Lindy Bros. Inc. of Philadelphia v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"), and 540 F.2d 102 (3d Cir. 1976) ("*Lindy II*"), and their progeny specifically authorize awards greater than the lodestar if certain conditions are met. To merely label such an award a windfall does nothing to establish whether such an award is proper. Rather the relevant inquiry is whether an increase in the lodestar is justified by the contingent aspects of the case.

### Increase in Lodestar For Contingency

Defendants urge that an increase in the lodestar for contingency is proper only if there is "a substantial likelihood of failure" by plaintiff at the outset of the case. *Pitchford v. Pepi,* 531 F.2d 92, 110 (3d Cir. 1976). Consequently, defendants submit that in evaluating a contingency factor the Court erred in considering "the risk of non-payment"; erred in adjusting the lodestar upward because the plaintiff's chances of success were "better than even" and for the first time, urge that no adjustment be made for time spent by counsel after the Court's opinion on liability, at which time a fee award was assured by the recent enactment of the Civil Rights Attorney's Fee Awards Act of 1976.

By reason of their reliance on *Pitchford* and their assertion that "the risk of non-payment is synonymous with the risk of failure," defendants have labelled this action a statutory fee case. In so doing, defendants ignore that at the outset of this case, there was no statute providing for attorneys' fees to prevailing parties. Rather, at the time counsel undertook to represent plaintiff, the prevailing law on attorneys' fees emanated from *Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53 (3d Cir. 1976), which held that "attorney's fees may be awarded as costs against a sovereign otherwise immune, if it pursues a bad faith, vexatious, wanton or oppressive course of litigation, but may not be awarded against an immune sovereign as damages because of pre-litigation obduracy." *Id.* at 58.

Despite this formidable standard, counsel proceeded to invest time, estimated by him at some 400 hours,[3] with little hope of reimbursement for counsel fees.[4] After substantial time was invested in this case, Congress saw fit to award attorneys' fees in cases of this type. This subsequent congressional action cannot reasonably be relied upon to undermine an award which reflects the contingent aspects at the outset of the case.

This is not a case which was undertaken with reliance on a statutory provision covering attorneys' fees and consequently the contingency factor was not decided as though those were the circumstances. If it were, it may have been necessary to determine whether the "substantial likelihood of failure" language of *Pitchford, supra,* expressed a litmus test for awards in statutory fee cases or whether subsequent developments in that case counsel otherwise. *Pitchford v. Pepi,* 440 F.Supp. 1175, 1181 (W.D.Pa.1977). As it was, to adequately evaluate the contingent aspects of this case, it was necessary to consider the risk of non-payment as well as the chances for

---

**3.** PX 1.

**4.** This case went to trial on September 13–17 1976 prior to the enactment of the Civil Rights Attorney's Fee Awards Act of 1976 on October 19, 1976.

success on the merits which are considered to have been "better than even."

Superficially more attractive is defendants' argument, urged for the first time on reargument, that the 20 or so hours expended after judgment on settlement negotiations and petitions for reargument were non-contingent in nature and, therefore, not the proper subject of an increase in the lodestar. There are two related problems with this argument. First, one cannot say that the actions taken after trial and judgment are wholly non-contingent. That settlement negotiations take place in cases after judgment indicate that appellate rights can be considered formidable obstacles to ultimate recovery. The fact that defendants settled with plaintiff for essentially what the Court awarded does not lessen the prospective burden on a successful plaintiff who must negotiate knowing defendant has the right to appeal. Because of the contingencies involved in the process of appeal and to a lesser extent, motions for reconsideration, most attorneys on a contingent fee basis would be surprised to learn that their fee was assured upon an initial determination made by the trial court. At best, one can say that the period after judgment is less contingent than the period before judgment.

This brings one to the second problem. Evaluating the contingent aspects of a case, in the first instance, does not admit of precision. To engage in separate calculations for those parts of the proceeding urged to be less contingent would ultimately reduce the exercise to one of empty formalism incapable of meaningful review.

In this connection, defendants have failed to provide any guidance for bifurcating the contingent aspects of the case, i. e., treating the hours up to judgment in one fashion and those afterward in a different manner. In contrast, it is interesting to note that the

*Lindy II* court affirmed doubling the lodestar in eight categories including settlement, settlement administration and appellate proceedings. 540 F.2d at 126 (Gibbons, J. and Seitz, C. J. concurring in part and dissenting in part). Also instructive is the computation done in *Commonwealth v. O'Neill*, 431 F.Supp. 700, 705 (E.D.Pa.1977), which adjusted the lodestar upward for all work, except time spent on the fee application, including conferences and enforcement proceedings subsequent to the entry of a consent judgment. *See also Pitchford v. Pepi, supra,* 440 F.Supp. at 1181; *Baughman v. Wilson Freight Forwarding Co.,* 79 F.R.D. 520 (W.D.Pa.1977). These cases reflect the view that post-judgment proceedings are not sufficiently different from pre-judgment actions to warrant independent calculations. Under these circumstances, the Court is unconvinced there is sufficient justification to consider the 20 hours spent on settlement and reargument as separate from the rest of the case.[5]

Finally, with respect to evaluating the contingent aspects of the case, defendants maintain that the Court erred in weighing the difficulty of plaintiff's burden by merely ascertaining whether there had been a prior determination of liability on the relevant facts. However, it should be clear from the earlier opinion in this case that full consideration was given to the "complexity of the case and the difficulty of proving defendants' liability and resultant damages"[6] as well as whether there had been a previous determination of the question of liability. Specifically, the Court noted that the case was complicated by issues of pure speech and symbolic speech as well as plaintiff's property interest in a non-tenured position. Finally, consideration was given to the obstacles in proving damages and obtaining payment.

---

5. Defendants have also urged that time spent by paralegals be treated differently from time spent by attorneys. The Court declines to foster the inefficiency which is suggested by this argument. Nothing appears to be gained by insisting that attorneys either do work which in their opinion can be completely handled by paralegals or forego adequate compensation for time spent on these matters. *See, e. g., Commonwealth v. O'Neill,* 431 F.Supp. 700, 711–12 (E.D.Pa.1977).

6. *Aumiller v. University of Delaware,* No. 76–84 (D.Del. March 29, 1978) slip op. at 16.

Having considered the foregoing objections, nothing that the defendants have urged in the motion for reargument convinces the Court that the 50% increase in the lodestar reflecting the contingent aspects of the case was a "windfall" or anything but appropriate compensation well within the letter and spirit of *Lindy I* and *Lindy II.*

### Fee Application

The second basis of attack on the award of attorney's fees is the $3706 for 64.6 hours of work awarded at straight time which was spent in litigating the fee petition. Relying on *Dillon v. Berg*, No. 3967 (D.Del. Aug. 25, 1975), *aff'd* 538 F.2d 318 (3d Cir. 1976), defendants maintain that "it is the law of this Circuit and this District that a fee claimant is not entitled to compensation for the time spent in preparing and presenting his own request for a fee allowance." Defendants' belated reliance upon *Dillon* and its parent case, *United States v. Larchwood Gardens, Inc.*, 420 F.2d 531 (3d Cir. 1970), is misplaced. In my view, the issue, whether time spent litigating a fee petition in a civil rights case is compensable under the Civil Rights Attorney's Fee Awards Act of 1976, is unresolved in the Third Circuit.

In resolving the issue, the Court looked to the legislative history and the law of other circuits for guidance. Defendants maintain that the holdings expressed in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (W.D.Cal.1974), *aff'd* 550 F.2d 464 (9th Cir. 1977), and *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534, 539 (5th Cir. 1970), upon which the Court relied, represent exceptions rather than the rule on attorneys' fees and, therefore, defendants argue reliance upon them is ill-founded. The distinction upon which defendants' argument is based is that *Stanford Daily* and *Miller* permitted counsel to recover time spent litigating whether any fee was compensable rather than whether an increase in the lodestar was recoverable.

For several reasons it is concluded that defendants' distinction is one without a difference. First, the language of those cases permitting an award for time spent in litigating the fee petition contains no language of limitation. Second, Congress in drafting the 1976 Act unequivocally relied upon *Stanford Daily* without further comment upon it.[7] Third, the emerging body of case law makes clear that an award of attorneys fees, however calculated in the various circuits, may include the time expended by counsel to demonstrate entitlement to those fees. *Stanford Daily, supra; Miller, supra; Souza v. Southworth*, 564 F.2d 609, 614 (1st Cir. 1977); *Torres v. Sachs*, 69 F.R.D. 343, 347–48 (S.D.N.Y.1975), *aff'd*, 538 F.2d 10 (2d Cir. 1976); *Hairston v. R. & R. Apartments*, 510 F.2d 1090 (7th Cir. 1975). Fourth, despite defense counsel's averment that he was not challenging plaintiff's right to a reasonable fee but only counsel's attempt to increase the lodestar, litigating this phase of the case was not appreciably different from an outright challenge to the fee. Therefore, defendants cannot avoid what is otherwise a cost of litigation attributable to the losing party by merely asserting that its vigorous opposition was really on a different footing than the ordinary case.

### Miscellaneous Issues

▪ In addition to opposing an increase in the lodestar for contingency and the award for time expended on the fee petition, defendants raise several other points, none of them meritorious.

Defendants have urged that the award of attorneys' fees be reduced by the $5000 which plaintiff received as punitive damages. In support of this proposition, defendants rely on *Hughes v. Repko*, 429 F.Supp. 928 (W.D.Pa.1977), *vacated and remanded*, 578 F.2d 483 (3d Cir. 1978), a case in which the district court concluded that a childless couple earning $22,000 a year ought to share in the costs of counsel who

---

7. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 reprinted in [1976] U.S. Code Cong. and Admin. News, pp. 5909, 5913.

was retained to pursue their claims of racial discrimination in housing. In remanding the case, the Third Circuit declined to rigidly limit the award of fees by plaintiffs' ability to pay, finding no support in the legislative history of the Act for such a limitation. Thus reliance on *Hughes* is ill-founded.

Not only were plaintiffs in *Hughes* not unemployed like defendant Aumiller, but also the case in no way stands for the proposition that an award made to plaintiff ought to be used to offset the costs of attorney's fees which statutorily are the burden of the losing party. More to the point would be antitrust litigation which is governed by statutes providing that defendants pay both treble damages and attorneys' fees. *See, e. g., Pitchford, supra.* In this connection, one may reiterate the congressional intention to award fees "as prevail in other types of equally complex Federal litigation, such as antitrust cases."[8]

Also with respect to the plaintiff's finances, defendants submit that the Court erred in finding that "the legal fund set up in his behalf was inadequate to cover anything more than out-of-pocket expenses." Defendants are correct that the record is silent as to the total amount of the fund. The evidence does establish that plaintiff was impecunious at the time of suit and that in the more than two years of litigating this case, counsel received no payment for services or financial aid other than the $2111.95 advanced by the legal fund to cover out-of-pocket expenses. A not unreasonable inference flowing from these undisputed facts is that if the individuals supporting the legal fund were capable of funding more than routine costs, counsel would have sought a commitment from them particularly since his chances of being reimbursed were slight.

In focusing upon the risk of non-payment undertaken by plaintiff's counsel and the resulting delay in receipt of payment, the Court found that cash flow problems were experienced by counsel. Defendants maintain this finding was in error despite counsel's explicit assertion in his affidavit to that effect.[9] On cross-examination on this point, plaintiff's counsel elaborated that "doing a third of a year's work without getting compensated for it" created a "cash flow problem."[10] He further testified that although he could recall no specific case which he rejected by reason of his commitment to the present action, "there may have been cases that did not come to me because of my involvement representing the homosexual against the University of Delaware."[11] It is difficult to grasp how this examination by defense counsel disproved plaintiff's counsel's assertion regarding a cash flow problem.

In evaluating the quality of the work performed by counsel, substantial benefit to plaintiff was acknowledged leaving open whether cognizance ought to be taken of a possible public benefit as well. It has since been suggested that an adjustment specifically reflecting the public benefit may be awarded in addition to the *Lindy* calculation. *Hughes v. Repko, supra,* No. 77–1727/8, slip op. at 15–16 (3d Cir. May 12, 1978) (Garth, J., concurring). These less tangible benefits are also recognized when a court analyzing the quality of counsel's work looks beyond the actual amount of plaintiff's recovery to the non-monetary benefits which also accrue to the public. *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168–72 (3d Cir. 1975). Thus, although the dollar recovery in the instant case was only about $30,000, the non-monetary significance of the case justifies an award of attorneys' fees substantially in excess of that amount.

In commenting on the significance of the *Aumiller* case, it was noted that affidavits had been filed by persons other than plaintiff such as educators, homosexuals and civil rights groups, but that it was unnecessary to consider them independent of the non-

---

8. *Id.*

9. DX 1.

10. Doc. 58 at 14.

11. *Id.*

monetary benefits reaped by plaintiff. Defendants take exception to the passing reference to affidavits because they express personal opinions of lawyers rather than homosexuals or educators.

The defendants are correct as to the identity of the affiants. One affiant is general counsel to Lamda Legal Defense and Education Fund, Inc. who averred "that this case is an extremely significant case in the development of the law in this area, involving the right to unhampered freedom of speech in support of equal treatment of gay people." [12] The other is associate counsel of the American Association of University Professors who opined "the case is of substantial significance for educators throughout the country, as it reinforces in the strongest terms their first amendment rights." [13] The latter statement is identified as a personal opinion.

Had the Court been relying on these affidavits, it would have been incumbent to read them in as much detail and with as much precision as has now been occasioned by defendants' motion for reargument. However, because the Court did not rely upon them, there is no resulting prejudice to defendants, if indeed there was ever any possibility of the same.

In conclusion, having considered every point asserted by defendants as grounds for reargument, the Court finds no basis for modifying its earlier opinion. Consequently, defendants' motion for reargument will be denied.