**Marcel YOUAKIM, et al., Plaintiffs,**

v.

**Jess McDONALD, Director, Illinois Department of Children and Family Services, Defendant.**

No. 73 C 635.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 18, 1997.

Kenneth Kandaras, John Marshall Law School, Chicago, IL, Stacey E. Platt, Legal Assistance Foundation of Chicago, Chicago, IL, Robert E. Lehrer, Diane L. Redleaf, Lehrer & Redleaf, Chicago, IL, John Mark Bouman, Poverty Law Project, Chicago, IL, for Marcel Youakim, Linda Youakim, Timothy Robertson.

Terence Madsen, Jonathan Clark Green, Illinois Attorney General's Office, Chicago, IL, for Jerome Miller.

Terence Madsen, Jonathan Clark Green, Nancy K. Hall–Walker, Illinois Attorney General's Office, Chicago, IL, Christina M. Tchen, Esther N. Iwerebon, Daniel Martin Feeney, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Barbara L. Greenspan, Attorney General's Office, Chicago, IL, Danielle Jenkins Steimel, Office of the Atty. Gen., Chicago, IL, for Illinois Dept. of Children and Family Services.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Presently before the Court is Plaintiffs' Motion for an Order Directing Defendant to Provide Information General Rule 47(C)(5) (N.D.Ill.) Requires Him to Disclose and, Pursuant to Fed.R.Civ.P. 37, to Compel Discovery. The Motion arises from the pending Motion for Attorneys' Fees filed by: the law firm of Lehrer & Redleaf.[1] More specifically, the Motion arises from Defendant's objection to the hourly rates sought by Plaintiffs' lead counsel and contention that the rate paid by Defendant represents the appropriate hourly rate. (Rule 47(G) Joint Statement of Agreed and Disputed Matters ¶ 3(a), Ex. C).

### I. Local General Rule 47(C)(5)(b)

Local General Rule 47 governs motions seeking any award of attorneys' fees and provides for an exchange of information.

---

1. Defendant has settled Motions for Attorneys' Fees filed by: (1) the Cook County Public Guardian's Office; (2) the Poverty Law Project of the National Clearinghouse for Legal Services; and (3) the Legal Assistance Foundation of Chicago ("LAFC").

The movant is required to provide the respondent with the information specified in 47(C)(1)–(3). Respondent must then provide information as follows:

> (5) If no agreement is reached after the above information has been furnished, the respondent shall, within 21 days of receipt of that information, disclose the total amount of attorney's fees paid by respondent (and all fees billed but unpaid at the time of the disclosure and all time as yet unbilled and expected to be billed thereafter) for the litigation and shall furnish the following additional information as to any matters (rates, hours, or related nontaxable expenses) that remain in dispute:
>
>> (a) the time and work records (if such records have been kept) of respondent's counsel pertaining to the litigation, which records may be redacted to prevent disclosure of material protected by the attorney-client privilege or work product doctrine;
>>
>> (b) evidence of the hourly rates for all billers paid by respondent during the litigation;
>>
>> (c) evidence of the specific expenses incurred or billed in connection with the litigation, and the total amount of such expenses; and
>>
>> (d) any evidence the respondent will use to oppose the requested hours, rates, or related nontaxable expenses.

Defendant's billers for purposes of this Motion are those with the law firm Skadden, Arps, Slate, Meagher & Flom ("Skadden").[2] Finally, Rule 47(I) provides that the parties may file a motion seeking instructions from the court where they are unable "to resolve a dispute over what materials are to be turned over or the meaning of a provision of the Rule, or because of the failure of one or more of the parties to provide information required by the Rule."

■ The parties in the instant case dispute the meaning of provision (C)(5)(b): "evidence of the hourly rates for all billers paid by respondent during the litigation." Plaintiffs argue that it requires disclosure of the hourly rates paid to the billers in all cases during the time period encompassing the litigation, via representative records. Defendant contends that it is limited to the rates paid in the case in question.

Plaintiffs reason as follows:

When the drafters of Rule 47(C)(5) wished to confine a respondent's disclosure obligation to information about the fee claim itself, they knew how to do so. Rule 47(C)(5)(a) limits a respondent's obligation to disclose "time and work records" to ones "pertaining to the litigation." Similarly, Rule 47(C)(5)(c) limits a respondent's obligation to disclose "expenses" to those "incurred in connection with the litigation." By contrast, Rule 47(C)(5)(b) refers to rates "during the litigation," and thus refers expressly to a time frame and not to the litigation itself.

Plaintiffs then rely upon *Russello v. U.S.*, 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983), where the Supreme Court explained that when a statute "includes particular language in one section ... but omits it in another section ... it is generally presumed that [the drafter] acts intentionally or purposely in the disparate inclusion or exclusion." However, as Skadden points out, when Rule 47's drafters wished a party to turn over billing rates charged in other cases, they knew how to do so, as provision (C)(2) demonstrates:[3]

> If the movant's counsel or other billers have performed any legal work on an hourly basis during the period covered by the motion, the movant shall provide representative business records sufficient to show the types of litigation in which such hourly rates were paid and the rates that were paid in each type. If the movant's counsel have been paid on an hourly basis in the case in question or in litigation of the same type as the case in question, records showing the rates paid for those services must be provided....

---

2. Although Skadden no longer represents Defendant, Skadden has filed an amicus brief.

3. The Court notes that, for the reasons given in Plaintiffs' Reply, it attaches no weight to Skadden's submissions relating to its status as a member of Rule 47's drafting committee.

Specifically, the provision explicitly applies to "any legal work [performed] on an hourly basis during the period covered by the motion." In contrast, although provision (5)(b) also temporally qualifies the disclosure, it omits the word "any." Thus, although the Court agrees that the temporal qualification does not inform the present inquiry, it finds that provision (5)(b)'s failure to specify whether it applies to all cases or only the case in question amounts to just that: a failure to specify. In sum, Rule 47 is ambiguous. Accordingly, the Court turns to the Commentary to the Proposal to Adopt Rule 47, whose following excerpt is instructive:

> If the movant's counsel have been paid on an hourly non-contingent basis during the period covered by the fee motion, the rates paid may be relevant to the determination of an appropriate "market" rate for counsel. See, e.g., Gusman v. Unisys Corp., 986 F.2d 1146 (7th Cir.1993). In such cases, General Rule 4[7] would require the movant to provide the respondent with business-record evidence sufficient to show the types of litigation in which hourly non-contingent rates have actually been paid and the rates that were paid for each type.

> Although the Rule would require disclosure of actually-paid hourly rates, the Committee does not suggest that this is the only kind of relevant evidence to establish the appropriate market rate. Some movants' attorneys will not have charged hourly non-contingent rates to paying clients, for example, attorneys employed by nonprofit or "public interest" organizations, or attorneys who confine their practice to contingent plaintiffs' litigation. Such movants will have to rely on other kinds of evidence to establish the appropriate rate. Moreover, even as to attorneys who have been paid on a non-contingent hourly basis, the rates they have been paid may not be conclusive as to the hourly rate that should be used in determining the lodestar. See Gusman, 986 F.2d at 1150–51. Accordingly, General Rule 4[7] contemplates that other kinds of evidence may be used to establish this hourly rate, and

requires the movant to provide the other side with such evidence.

(Def.'s Ex. A).

Significantly, the Gusman decision teaches that the "starting point" in assessing a reasonable attorney's fee is "the market's valuation of the attorney's services," measured by the actual fees that other clients have paid the attorney. 986 F.2d at 1150. As this inquiry produces a presumptive rate, the Seventh Circuit explained that "we do not require district judges to leap directly from the willingness of some persons to pay $X to Lawyer Y that $X is 'the' hourly rate of Lawyer Y." Id. at 1151. However, the court cautioned that "a judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community." Id. This is so because "[l]awyers do not come from cookie cutters." Id. at 1150. The Gusman analysis having informed Rule 47 undercuts Plaintiffs' argument that to require more disclosure of the movant than the respondent violates an alleged mutuality principle; rather, Gusman contemplates such a disparity. Moreover, in discussing, and rejecting, possible justifications for departure from the presumptive rate, the Seventh Circuit explained that "a party [who] hired pricey big-city lawyers to defend itself is in no position to contend that only small-town lawyers, at small-town rates, were appropriate." Id. at 1151. This reasoning is reflected in Rule 47's requirement that a respondent who opposes the movant's hourly rate disclose the hourly rate it actually paid to defend the case. However, Gusman does not support an interpretation of Rule 47 that requires mutual disclosure. Finally, although Gusman explained that a reasonable attorney's fee under 42 U.S.C. § 1988 is the opportunity cost of the civil rights case (i.e., the time foregone by representing the plaintiff) measured by the market's valuation of the prevailing attorney's services, it does not inevitably follow that the market's valuation of the opposing attorneys' services is a measure of the prevailing attorney's opportunity cost. Accordingly, the Court declines Plaintiffs' interpretation and denies the Motion to direct further disclosure under Rule 47.

## II. Fed.R.Civ.P. 37

■ Plaintiffs also move the Court to compel discovery pursuant to Fed.R.Civ.P. 37, having drawn objections to several interrogatories. Interrogatory 2 asked Defendant to "[i]dentify all comparable litigation in which the billers engaged during the period of the litigation, and the client(s) of Skadden in that litigation." Comparable litigation is defined as: "complex federal litigation, including, but not limited to: (a) antitrust or securities cases in federal court; (b) any federal court cases brought on behalf of a plaintiff class or against a defendant class; and (c) a federal court suit seeking injunctive relief in which the cost of compliance with the relief sought would exceed $1 million." Interrogatory 3 asked Defendant to "state the individual rate for each biller" in "each piece of comparable litigation." Interrogatory 4 asked Defendant to state the "discounted rate" he charged in any piece of comparable litigation in which his billers here engaged. Defendant objected to the discovery request, defining comparable litigation to this case as "class action suits raising Section 1983 claims." (Discovery Resp. at 4).

*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) governs the pending attorneys' fees motions and, thus, the present Motion to Compel. In *Blum*, the Supreme Court held "that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the community." *Id.* at 895, 104 S.Ct. at 1547. The Court explained that

In enacting the statute, Congress directed that attorney's fees be calculated according to standards currently in use in other fee shifting statutes:

"It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust[,] and not be reduced because the rights involved may be nonpecuniary in nature. The applicable standards, see *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), are correctly applied in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974); *Davis v.*

*County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D.Cal.1974); and *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin. News 1976, pp. 5908, 5913.

In all four of the cases cited by the Senate Report, fee awards were calculated according to the prevailing market rates.

*Id.* (alterations in original). The Supreme Court provided further guidance, noting that:

In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 896 n. 11, 104 S.Ct. at 1547 n. 11.

At first blush, one might construe the Senate Report quoted in *Blum* as authority for the proposition that "equally complex litigation, such as antitrust cases" constitutes comparable litigation for purposes of determining an appropriate hourly rate to be awarded under § 1988. Plaintiffs do so, importing this language into the definition of comparable litigation contained in the interrogatories at issue. However, as Skadden aptly argues, the Senate Report was referring to the "standard" that governs other fee shifting statutes, including antitrust, with the standard being the prevailing market rate for similar work in the community. The Senate Report alluded to "equally complex Federal litigation" in order to justify a market-rate standard, as opposed to a reduced rate stemming from the nonpecuniary nature of § 1988 litigation, for the explicit purpose of award-

ing "fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *Id.* at 893–94, 104 S.Ct. at 1546; *compare with* 18 U.S.C. § 3006A(d) (limits fees of court appointed counsel in criminal cases) and 42 U.S.C. § 1997e(d)(3) (limits attorneys' fees in prisoner-civil-rights cases). The Senate Report simply did not address whether antitrust litigation constitutes a similar service for purposes of determining the prevailing market rate for services covered by § 1988.[4]

As discussed in relation to the Rule 47 Motion, the Seventh Circuit has held that, where the plaintiff is not a paying client, the presumptively reasonable rate for a § 1988 award is the opportunity cost of the attorney's services (*i.e.,* "the income foregone by representing the plaintiff"). *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1149–51 (7th Cir. 1993). The opportunity cost is inferred from the actual rates that clients pay the attorney multiplied by the number of hours worked; the strength of the inference is a function of the weight of the evidence presented. The Seventh Circuit based this rule on the following characterization of *Blum*'s holding: "lawyers who donate their legal services at bargain rates to legal aid organizations may collect under § 1988 the fees they could obtain if the charitable element were removed." *Id.* at 1149 (internal quotations and citations omitted). However, the Seventh Circuit has also dictated that "the reasonable fee is capped at the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought." *Cooper v. Casey,* 97 F.3d 914, 920 (7th Cir.1996). In *Cooper,* the prevailing plaintiffs were represented by Kirkland & Ellis, who requested reimbursement at the rates at which they bill their paying clients, presumably for commercial litigation. These rates constituted their presumptive rate. However, the defendants rebutted the presumptive rate with evidence that "a competent civil rights lawyer could have been hired to represent the plaintiffs at

a lower rate," and the plaintiffs did not present other evidence to justify the rates sought. *Id.* at 920–21. Illustrating why the rates sought were not reasonable in light of that evidence, the Seventh Circuit stated:

> Suppose the best lawyer in the United States charges $1,000 an hour and is worth every cent of it. Only his practice has nothing to do with civil rights; he is, let us say, an antitrust trial lawyer. He is requested to represent an indigent civil rights plaintiff, and he does so, giving the case his best shot and, despite his inexperience in civil rights litigation, doing a superb job. Would he be entitled to an award of fees at the rate of $1,000 an hour? Not if the judge could have procured competent counsel for the plaintiff at a much lower rate. It is no more reasonable to pay a lawyer $1,000 an hour for services that could be obtained at $200 an hour than it is to pay $1,000 for a hood ornament that you could buy elsewhere for $200. Judges have to be careful when they are spending other people's money.

*Id.* at 920. Of course, as the court noted, the $1,000–per–hour–lawyer is not a mere "ornament" if: (1) he worked five times as fast as the lawyer who charges $200 an hour; (2) his antitrust trial skills were perfectly transferable to civil rights litigation so that he obtained a better result than the civil rights specialist could have; or (3) he could show that he does in fact practice in the area of civil rights. *Id.* But Kirkland & Ellis did not make such a showing. Accordingly, the court remanded the award for further proceedings in which it could attempt to justify the rates sought.

Skadden now relies upon this illustration for the proposition that "the relevant market for determining attorneys' fees under Section 1988 is *not* the commercial rates that might be charged in other matters by private law firms representing prevailing plaintiffs," but rather "the market in which 'a competent civil rights lawyer' may be engaged." (Br. at

---

4. Notably, the Supreme Court summarized one of the cases cited with approval in the Senate Report—*Swann,* 66 F.R.D. 483—as having calculated the fee award "with reference to hourly rates generally charged in federal litigation." *Id.* at 894 n. 9, 104 S.Ct. at 1547 n. 9. Other courts

have also defined "comparable services" for awarding fees under § 1988 as "equally complex federal litigation." *See Covington v. District of Columbia,* 57 F.3d 1101, 1103, 1111–12 (D.C.Cir. 1995) & *Dietrich v. Miller,* 494 F.Supp. 42, 44 (N.D.Ill.1980).

4). The Court agrees that the Seventh Circuit's holding in *Cooper*, namely, "the reasonable fee is capped at the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought," contemplates similar civil rights litigation as "the type of litigation." For example, in *McNabola v. CTA*, 10 F.3d 501, 519 (7th Cir.1993), cited in *Cooper*, the Seventh Circuit explained that "the market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients **for the type of work in question.**" (internal quotation marks and citations omitted)(emphasis added). The court then upheld the award, as it was "supported by affidavits of other attorneys in the area attesting to the experience of McNabola's attorneys and to the reasonableness of their rates for this type of civil rights litigation." *Id.* (emphasis added).

However, the Seventh Circuit's illustration in *Cooper* does not show that commercial rates are per se irrelevant to the reasonable-fee determination under § 1988. Rather, commercial rates obtained by a prevailing attorney from her paying clients are relevant to the attorney's presumptively reasonable rate, which is measured by the opportunity cost of the civil rights case. The Seventh Circuit's statement, that "the reasonable fee is capped at the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought," is merely an application of a justification for reducing the presumptive rate. In other words, the prevailing market rate rebuts the presumption of reasonableness attached to the prevailing attorney's opportunity cost. Yet the Seventh Circuit made clear in *Gusman* that "a judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community." 986 F.2d at 1151. Hence, the prevailing market rate is not derived from the average rate in the community. Rather, the examples given that justify a reduction were "that the lawyers did not display the excellence, or achieve the time savings, implied by their higher rates. A judge might conclude that the plaintiff did not need top flight counsel in a no-brainer case." *Id.* This is so because, as the court explained, the market

supports higher rates for some attorneys; for example, "a $225 per hour lawyer may end up costing less than a $150 lawyer for the same result or may produce better results for the same total bill." *Id.* These factors inform the prevailing market rate determination. Thus, although the *Cooper* court remarked that the reasonable fee for the $1,000–per–hour–antitrust–lawyer in its illustration was "capped at the prevailing market rate," he remained free to show that he "gets $1,000 an hour because he is five times as fast as the lawyer who charges $200 an hour" or that "his antitrust skills were perfectly transferable to civil rights litigation and as a result he was able to obtain a much better outcome for his civil rights client than the civil rights specialist could have done." 97 F.3d at 919. Accordingly, the Kirkland & Ellis attorneys were required to make such a showing in order to demonstrate that their presumptive rate was in fact reasonable in the face of evidence that "a competent civil rights lawyer could have been hired to represent the plaintiffs at a lower rate."

Plaintiffs argue that under *Cooper's* reasoning Skadden's opportunity cost of the present suit (*i.e.*, its commercial litigation rates) is relevant to show the reasonable hourly rates of Defendant's individual attorneys, which Defendant has put into issue by contending, in fee settlement negotiations and implicitly in the Rule 47(G) statement, that the reasonable rate for Plaintiffs' lead attorneys is the rate that Defendant paid its lead attorney. However, under its contract with the State, all Skadden attorneys billed Defendant at the same hourly rate of $175 (*i.e.*, the lead attorney billed at the same rate as the most junior attorney), which constitutes a "blended rate"—a weighted average of the rates for senior and junior attorneys. Thus, the actual rate is not probative of the market rate for Skadden's lead counsel's services except to establish a floor, assuming that her services are more valuable than those of the junior associates. Consequently, Skadden's contention has not opened the door. Likewise, because the blended rate is not probative of the market value of Skadden's lead counsel's services except as a floor, it is not available to either side as a

 

rate that attorneys in the community of similar experience, ability, and reputation command from their paying clients for the same type of work.

## CONCLUSION

For the reasons given, the Court DENIES Plaintiffs' Motion.